UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NUMBER 10-86063-crm |
| | ) | |
| URBAN GREEN DUPLEX, LLC, | ) | |
| | ) | CHAPTER 11 |
| Debtor, | ) | |

| | | |
|---|---|---|
| | ) | |
| THE PIEDMONT BANK, | ) | |
| successor in interest to Republic | ) | |
| Bank of Georgia, | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| URBAN GREEN DUPLEX, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION TO DISMISS THE CASE,
OR FOR RELIEF FROM THE AUTOMATIC STAY**

Pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a), The Piedmont Bank, successor in interest to Republic Bank of Georgia (the "Movant") hereby requests that this Court dismiss the Chapter 11 case finding that it is a single asset case that has been filed in bad faith. In the alternative, Movant seeks relief from the automatic stay to foreclose its lien and security interest in certain real property owned by Urban Green Duplex, LLC (the "Debtor").  In support of its motion, Movant respectfully shows this Court as follows:

1.

This Court has subject matter jurisdiction pursuant to 28 USC §1334(a).  This is a core proceeding under 28 USC §157(b)(2).

2.

Debtor voluntarily filed for Chapter 11 bankruptcy protection on September 3, 2010, just days before Movant's scheduled foreclosure of the property securing Debtor's loan with Movant.

3.

The Debtor is the owner of certain real property located at 410 Grant Park Place, Atlanta, Fulton County, Georgia (the "Property").

4.

Movant is the holder of a Promissory Note from Debtor in the amount of $100,000.00, a copy of which is attached hereto as Exhibit A.  The Promissory Note matured on July 27, 2010 and the indebtedness has not been paid by the Debtor.

5.

Movant is also the holder of that certain Security Deed to Secure Debt and Security Agreement dated July 27, 2009 (the "Deed") which pledged, among other things, the Property, a copy of which is attached hereto as Exhibit B.

6.

The Property is also pledged by Debtor to Movant for an indebtedness of a related Debtor, Urban Green Cherokee Development, LLC, Case No. 10-86073-crm, of over $400,000.00.   The two debts on the Property are greater than its value of approximately $200,000.00.  A copy of the Deed is attached hereto as Exhibit C.

7.

The Property is the sole asset reported by this Debtor. There is no source of income for the Debtor, and the bankruptcy case was filed on the eve of foreclosure of the

Grant Park Place Property scheduled by Movant. There is no equity in the Property. There is no reasonable likelihood of rehabilitation.

8.

This Court has found cause to dismiss a bankruptcy case for bad faith when Debtor has a single asset which it places in bankruptcy to interfere with a creditor's collection rights. *In re Vallambrosa Holdings, L.L.C.,* 419 B.R. 81 (2009); *In re Club Candlewood Associates, LP,* 106 BR 752 (Bkrtcy ND Ga. 1989).

9.

In the alternative, Movant is not adequately protected and should be permitted to proceed with collection and foreclosure by this Court granting this motion to modify the automatic stay.

10.

Because the Deed provides that the Debtor is responsible for Movant's attorney's fees in pursuing legal action such as this motion, Movant is entitled to reasonable attorney's fees from the Debtor to be secured by the Property pursuant to 11 U.S.C. §506(b) unless it is shown that there is no equity in the Property.

WHEREFORE, Movant respectfully requests that this Court enter an order:

(1)    Dismissing the bankruptcy case finding that it was filed in bad faith; or

(2)    Relieving it from the provisions of the bankruptcy stay and authorizing it to proceed with the exercise of its private power of sale and foreclosure under its Deed, all in accordance with and pursuant to appropriate statutes;

(3)    For accruing interest and reasonable attorney's fees pursuant to 11 U.S.C. § 506(b);

(4)    For waiver of the requirements of FRBP 4001(a)(3) to allow Movant to execute the order granting any relief instanter; and

(5)    For such other relief as this Court deems appropriate.

This 22ⁿᵈ day of September, 2010.

/s/_____
Lynn L. Carroll
Georgia Bar No. 460365

**SIEGEL & GOLDER, P.C.**
5605 Glenridge Drive
Suite 690, One Premier Plaza
Atlanta, Georgia 30342
404/252-3000
llc@sglegal.com

# PROMISSORY NOTE

$100,000.00

Lawrenceville, Georgia
July 27, 2009

**FOR VALUE RECEIVED**, the undersigned, **URBAN GREEN DUPLEX, LLC**, a Georgia limited liability company ("Maker"), promises to pay to the order of **THE PIEDMONT BANK**, a Georgia banking corporation with its principal place of business in Norcross, Georgia ("Bank"), the principal sum of **ONE HUNDRED THOUSAND AND NO/100THS DOLLARS ($100,000.00)** in lawful money of the United States, payable at the principal office of Bank in Norcross, Georgia, or such other place or to such other person as the holder hereof may from time to time designate in writing, together with interest from date on said principal sum or so much thereof as may, from time to time, be advanced and outstanding hereunder, computed on the outstanding principal balance from day to day on the basis of a 360-day year for the actual number of days in each interest period at the rate described below:

One Percent (1.00%) per annum above the "Prime Rate" of interest (the "Prime Rate") as the "Prime Rate" is published in the Wall Street Journal, Eastern Edition, in effect on the date hereof and from time to time designated by the Wall Street Journal, Eastern Edition, with any increase or decrease in the interest rate payable hereunder to take effect on the calendar day on which an increase or decrease in the Prime Rate takes effect, with a floor rate of Six and One-Half Percent (6.50%) per annum. The Prime Rate of interest in effect on the date hereof is Three and One-Quarter Percent (3.25%) per annum.  The principal balance of this Note shall conclusively be deemed to be the unpaid principal balance appearing on the Bank's records unless such records are manifestly in error.

This Promissory Note shall be repaid as follows:

From the date of this Note through and including July 27, 2010, interest only shall be payable in monthly installments commencing August 27, 2009, and continuing on the same day of each month thereafter, with a final payment of outstanding principal and accrued interest being due and payable on or before **JULY 27, 2010,** unless required to be sooner paid pursuant to the provisions set forth hereinbelow or in the other Loan Documents, as hereinafter defined (the "Maturity Date").

If any payment of principal or interest on this Note shall become due on a Saturday, Sunday or legal holiday under the laws of the State of Georgia, such payment shall be made on the next succeeding business day, and such extension of time shall in such case be included in computing interest due in connection with such payment.

Initial

745005.1

Ex A. A

The indebtedness evidenced by this Note may be prepaid in full or in part at any time and from time to time without prepayment charges or premium.

Payments as made shall be applied first to the payment of any applicable default charges, then to accrued and unpaid interest on the outstanding principal sum, and the balance of said payment shall be applied to principal. Principal, interest, and default charges shall be payable in lawful money of the United States of America.

This Note is a revolving line of credit, and therefore, principal may be disbursed, prior to maturity, in two or more disbursements which in the aggregate will at no time exceed the principal amount of this note set forth above. Such disbursements shall be made upon demand by Maker so long as no Event of Default exists under the Loan Documents. The principal disbursed under this note may be repaid in whole or in part prior to maturity and, if so repaid, may be again borrowed and repaid from time to time prior to maturity. The principal so disbursed will be repaid at maturity or as otherwise provided in this note. The repayment of any principal disbursed pursuant hereto shall not affect the enforceability of this note as to any future or other disbursements made hereunder.

This Note is secured by, among other things, (i) a Deed to Secure Debt and Security Agreement (the "Duplex Security Deed") of even date herewith between Maker and Bank pursuant to which Maker has conveyed a security interest in certain real property located in Fulton County, Georgia and the improvements located or to be located thereon (the "Duplex Property"), and (ii) a Deed to Secure Debt and Security Agreement (the "Cherokee Security Deed") (the Duplex Security Deed and the Cherokee Security Deed are collectively referred to herein as the "Security Deed") of even date herewith between Urban Green Cherokee Developers, LLC and Bank pursuant to which Urban Green Cherokee Developers, LLC has conveyed a security interest in certain real property located in Fulton County, Georgia and the improvements located or to be located thereon (the "Cherokee Property") (the Cherokee Property and the Duplex Property are collectively referred to herein as the "Property"), as security for the indebtedness evidenced by this Note, together with certain other loan documents referred to in said Security Deed (the "Loan Documents"). Should any installment of principal or interest or any other sums as required by this Note or said Security Deed not be paid in full when due, or should there occur a "Default" or an "Event of Default" under and as defined in the Security Deed or the other Loan Documents (any such event being hereinafter referred to as an "Event of Default" for purposes of this Note), then and in any such event the entire unpaid principal sum evidenced by this Note, together with all interest accrued thereon, shall, at the option of the holder and upon notice or demand to the undersigned, become due and may be collected forthwith, time being of the essence of this Note. Any periods of cure or notice provided for the benefit of Maker in this Note and in the other Loan Documents shall run concurrently and not consecutively. It is further agreed that the failure of the holder to exercise this right of accelerating the maturity of the debt, or any other indulgence granted from time to time, shall in no event be considered as a waiver of such right of acceleration or estop the holder from exercising such right during the pendency of any such Event of Default hereunder or

745005.1

Initial

under the Security Deed or other Loan Documents or in the event of any subsequent Event of Default hereunder or thereunder.

Upon the occurrence of any Default, Maker shall be entitled to receive written notice of such Default and the opportunity for period of five (5) days after receipt of said notice to cure such Default, prior to the exercise by Bank of any remedy provided in this Note, if the Default concerns the failure to pay any such when and as due under this Note or the Security Deed securing this Note (a "Monetary Default"), provided that Maker shall be entitled to such notice of Monetary Default and may avail itself of said cure period regarding Monetary Defaults no more than one time in any calendar year. In the case of the occurrence of any Default not concerning the payment of money and which does not also constitute a Monetary Default (any such other Default herein referred to as a Non-Monetary Default), Maker shall be entitled to receive written notice of an opportunity for a period of fifteen (15) days prior to the exercise by Bank of any remedy provided in this Note. If a default contemplated in this paragraph cannot by its nature be fully curd within said fifteen (15) day period, Maker shall have a reasonable additional period to cure same provided that Maker continuously prosecutes the curing action with diligence, and further provided that such additional period to cure shall not exceed forty five (45) days in the aggregate. No omission on the part of Bank to exercise such option, when entitle to do so, shall be construed a waiver of such right. The notice and right to cure provisions contained in this paragraph shall not apply to non-payment of the entire remaining outstanding balance evidenced by this Note by the scheduled Maturity Date.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, to the other party at the address of such other party as set forth below or at such other address within the continental United States as such other party may designate by notice given in accordance herewith (provided, however, that no notice of change of address shall be effective until the date of receipt thereof). The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of such notice, demand, request or communication sent as aforesaid. Delivery to a party or to any officer, partner, agent, or employee of such party at the designated address shall constitute effective delivery for purposes hereof. Any such notice, election, demand, request, or response shall be addressed as follows:

Initial

|              |                                      |
|--------------|--------------------------------------|
| Maker:       | Urban Green Duplex, LLC              |
|              | 400 Peachtree Industrial Boulevard   |
|              | #504, Suite 5                        |
|              | Suwanee, Georgia 30024               |
|              | Attn: Michael J. Lant                |
|              |                                      |
| Bank:        | The Piedmont Bank                    |
|              | 5270 Peachtree Parkway, Suite 116    |
|              | Norcross, Georgia 30092              |
|              | Attn: Monty G. Watson, President     |
|              |                                      |
| with a copy to: | Andersen, Tate & Carr, P.C.       |
|              | 1505 Lakes Parkway, Suite 100        |
|              | Lawrenceville, Georgia 30043         |
|              | Attention: Michael J. Hay, Esq.      |

The undersigned agrees that if, and as often as, this Note is placed in the hands of an attorney for collection, or to defend or enforce any of the holder's rights under the Loan Documents, the undersigned shall pay to the holder reasonable attorneys' fees actually incurred without regard to statutory presumption, together with all court costs and other expenses paid by such holder.

And each of us, whether maker, endorser, guarantor, or surety, hereby severally (i) waives and renounces, for himself and family, any and all homestead and exemption rights either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other State, or the United States, as against this debt or any renewal thereof; and (ii) jointly and severally grants, conveys, transfers and assigns to the holder hereof all of the undersigned's right, title and interest in and to said exemption rights and the proceeds thereof as further security for the payment of the indebtedness secured by said Security Deed, and do hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the holder hereof a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal or modification thereof.

Except as otherwise provided herein, the undersigned and all endorsers, sureties and guarantors of this Note do severally waive presentment for payment, demand, protest and notice of non-payment, or dishonor and of protest, and of the exercise of any option hereunder or under the documents evidencing, securing or relating to the indebtedness evidenced by this Note, and agree that, without notice to any of them and without discharging any of them, this Note may be from time to time extended or renewed for any term or terms by agreement between the holder hereof and the undersigned. All parties consent to any extension of time (whether one or more) of payment hereof, or any release of all or any part of the security for the payment of this obligation. Any such extension or release may be made without discharging any such party's liability

745005.1

Initial _____

hereunder.

Whenever reference is made herein to "the undersigned", "Maker", "Bank", or "holder", such reference shall be deemed to refer to and include the heirs, executors, legal representatives, successors and assigns thereof, the same as if in each case expressed, it being expressly agreed that the rights and obligations of all parties named herein or liable hereunder shall inure to the benefit of and be binding upon such parties and their respective heirs, executors, legal representatives, successors and assigns.

This Note has been negotiated, executed, sealed and delivered in Lawrenceville, Georgia, and it is the intention of Maker and Bank that this Note be construed, governed and enforced in every respect in accordance with the substantive laws of the State of Georgia, and Maker hereby consents to the jurisdiction of the federal and state courts of Georgia for the resolution of any matters relating to this Note.

The remedies of the holder hereof as provided herein, or in the Security Deed or the Loan Documents, or at law or in equity shall be cumulative and concurrent, and may be pursued singly, successively, or together at the sole discretion of the holder hereof, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. This Note may not be modified or terminated orally but only by agreement or discharge in writing and signed by the Maker and the party who is the owner and holder of this Note at the time endorsement of any waiver, modification or discharge is sought. All of the rights, privileges and obligations hereof shall inure to the benefit of and bind the respective successors and assigns of the parties hereto.

The obligation of the undersigned to make or cause to be made the payments required hereunder shall be absolute and unconditional. The undersigned shall pay or cause to be paid without abatement, diminution, postponement or deduction (whether for taxes or otherwise) regardless of any cause or circumstance whatsoever, including, without limitation, any defense, set-off, recoupment or counterclaim which the undersigned may have or assert against the holder hereof.

At its option, Bank may charge and collect a "late charge" not to exceed an amount equal to four percent (4%) of any installment or other payment due hereunder, under the Security Deed, or under the other Loan Documents, which is not paid within ten (10) days after the due date thereof, such charge to be due at the time of payment of the next succeeding installment following notification of assessment by Bank, and such charge to be assessed at Bank's option regardless of whether Bank shall have given notice of failure to pay to the undersigned. Commencing on the date of any Event of Default under this Note, the Security Deed, or any of the other Loan Documents, the undersigned further promises to pay, on each date that a payment on this Note is due and regardless of whether or not there has been an acceleration of the indebtedness evidenced hereby as set forth herein, interest on the outstanding principal balance of

745005.1

Initial ⫰

this Note at the interest rate equal to twelve percent (12%) per annum on the daily outstanding principal balance of this Note from the date of such Event of Default through the date of cure thereof, such default interest being due and payable together with and in the same manner as interest as hereinabove provided; provided that any such interest which has accrued shall be paid at the time of and as a condition precedent to the curing of any Event of Default.

It is the intention of the undersigned and the holder to conform strictly to the usury laws now or hereafter in force, and any interest payable hereunder, under the Security Deed, or under the other Loan Documents shall be subject to reduction to the amount not in excess of the maximum non-usurious amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. In the event the maturity of this Note is accelerated by reason of any provision of this Note or by reason of an election by the holder hereof resulting from an Event of Default (or an event permitting acceleration) under the Security Deed or other Loan Documents, voluntary prepayment by the undersigned, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the dates of each advance of loan proceeds hereunder until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the holder hereof either be rebated to the undersigned or credited on the principal amount of this Note or if all principal has been repaid, then the excess shall be rebated to the undersigned.

Time is of the essence with respect to this note.

[SIGNATURES ON FOLLOWING PAGE]

745005.1

Initial

IN WITNESS WHEREOF, the undersigned has executed, sealed, and delivered this Note the day and year first above written.

**MAKER**:

URBAN GREEN DUPLEX, LLC, a Georgia limited liability company

By its Manager:  Urban Green Holdings, LLC, a Georgia limited liability company

By: _____(Seal)
Michael J. Lant, Manager

[SIGNATURE PAGE TO PROMISSORY NOTE]

Initial _____

71100095

Deed Book 48230 Pg 558
Filed and Recorded Jul-30-2009 01:03pm
2009-0221619
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**AFTER RECORDING, RETURN TO:**

Michael J. Hay, Esq.
ANDERSEN, TATE & CARR, P.C.
Post Office Box 2000
1505 Lakes Parkway, Suite 100
Lawrenceville, Georgia 30046-2000
File #20511.70001 (JW)

FOLTZ MARTIN, LLC
FIVE PIEDMONT CENTER
SUITE 750
ATLANTA, GEORGIA 30305-1509

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "Security Deed" or "Deed to Secure Debt and Security Agreement"), made as of the 27th day of July, 2009, by and between **URBAN GREEN DUPLEX, LLC**, a Georgia limited liability company (hereinafter called "Grantor"), with an address of 400 Peachtree Industrial Boulevard, #504, Suite 5, Suwanee, Georgia 30024, and **THE PIEDMONT BANK** (hereinafter called "Grantee"), with an address of 5270 Peachtree Parkway, Suite 116, Norcross, Georgia 30092;

<u>W I T N E S S E T H</u>:

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "Property"):

(a)    All that certain tract or parcel of land more particularly described in <u>Exhibit "A"</u> attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating

745013.1

*Exh. B.*

Deed Book 48230 Pg 559

plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, chattels, inventory, accounts, consumer goods, general intangibles and personal property of every kind and nature whatsoever owned by Grantor and now or hereafter located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land and the improvements located from time to time thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions or proceeds from a  permitted sale of any of the foregoing, all tradenames, trademarks, servicemarks, logos, and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land and the improvements located thereon or any part thereof and are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Deed.  The location of the above described collateral is also the location of the Land;

(c)     All building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, construction of the buildings and improvements upon the Land and which are now or hereafter owned by Grantor;

(d)     All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof or appurtenant to the title to the Land, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor; and

(e)     All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as an equity, of Grantor in and to the same; reserving only the right to Grantor to collect the same so long as an Event of Default has not occurred hereunder.

TOGETHER WITH all and singular the rights, tenements, hereditaments, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Property

745013.1

Deed Book 48230 Pg 560

hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor, including but not limited to, all rents, profits, issues and revenues of the Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving only the right to Grantor to collect the same for its own account so long as Grantor is not in default hereunder.

TO HAVE AND TO HOLD the property and all parts, rights, members and appurtenances thereof unto Grantee, its respective successors and assigns, to its or their own use IN FEE SIMPLE forever.

AND Grantor covenants that Grantor is lawfully seized and possessed of the Property and has good right to convey the same as aforesaid, that the Property and every part thereof are unencumbered except for those matters (hereinafter referred to as the "Permitted Encumbrances") expressly set forth in Exhibit "B" attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title to the Property and every part thereof against the claims of all persons and entities whomsoever, except as to the Permitted Encumbrances.

This Security Deed is intended (i) to constitute a security agreement for purposes of the Uniform Commercial Code of Georgia and (ii) to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "Secured Indebtedness"):

(a)    The debt evidenced by that certain Promissory Note dated of even date herewith, made by Grantor, payable to the order of Grantee, in the principal face amount of **ONE HUNDRED THOUSAND AND NO/100THS DOLLARS ($100,000.00)**, together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced thereby, or any replacement note or notes that may be substituted for said Promissory Note after the date hereof (collectively hereinafter referred to as the "Note"), with interest on the outstanding principal at the rates provided for in the Note, with the final payment being due not later than **JULY 27, 2010**; and

(b)    Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby in the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances); and

(c)    Any and all costs, expenses, charges, liabilities, commissions and attorneys' fees now or hereafter chargeable to or incurred by, or disbursed by, Grantee as provided for herein, or by applicable law; and

3

745013.1

(d)    Any and all other indebtedness now or hereafter owing by Grantor to Grantee under the Loan Documents, as hereinbelow defined.

The Note, this Security Deed, and all documents, instruments, deeds, mortgages and agreements now or hereafter evidencing, securing or otherwise relating to the Note, this Security Deed, or the Secured Indebtedness, together with any and all renewals, modifications, consolidations and extensions thereof, are collectively hereinafter referred to as the "Loan Documents."

The parties hereto further expressly agree that should all monies advanced to the Grantor herein pursuant to the note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt shall not become null and void by operation of law or otherwise but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor.  Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. § 44-14-80(a)(2).

PROVIDED ALWAYS, that should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, then this Security Deed shall be canceled and surrendered, but otherwise shall remain in full force and effect.

AND GRANTOR HEREBY further covenants and agrees with Grantee as follows:

<u>ARTICLE 1</u>

1.01    <u>Payment of Indebtedness and Performance of Obligations</u>.  Grantor will pay the Secured Indebtedness according to the tenor thereof promptly as the same shall become due, and shall perform every obligation of Grantor contained in this Security Deed, and in each and every instrument now or hereafter evidencing or securing the Secured Indebtedness, and in other Loan Documents.

1.02    <u>Monthly Deposits</u>.  To secure further the payment of the taxes and assessments referred to in Section 1.03 below, and the payment of premiums on the insurance policies referred to in Section 1.04 below, Grantee, at its option after an Event of Default, shall have the right to require Grantor to deposit with Grantee on the first day of each and every month a sum which, in the reasonable estimation of Grantee, shall be equal to one-twelfth of the annual taxes and assessments and one-twelfth of such annual insurance premiums; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes, assessments and insurance premiums on the Property as the same accrue and are payable.  Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Grantee.

4

745013.1

Deed Book 48230 Pg 562

If said deposits are insufficient to pay the taxes, assessments and insurance premiums in full as the same become payable, Grantor shall deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes, assessments and insurance premiums in full.    Upon any Event of Default hereunder or under the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as Grantee may elect.

1.03    <u>Taxes, Liens and Other Charges.</u>

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor shall promptly pay any such tax relating to this Security Deed, the Property or the Note; if Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment, then the entire balance of the principal sum secured by this indenture and all interest accrued thereon shall, thirty (30) days after written notice, become due and payable at the option of Grantee.    Nothing herein shall impose upon Grantor the obligation to pay any state or federal income taxes, corporate franchise taxes or net worth taxes assessed or levied against Grantee.

(b)    Grantor shall pay (to the extent the same are not paid from escrowed funds provided for in Section 1.02 hereof), before the same become delinquent, all taxes, liens, assessments and charges of every character already levied or assessed or that may hereafter be levied or assessed upon or against the Property and all utility charges for the Property, whether public or private; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c)    Grantor shall not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to remain outstanding upon any part of the Property.

(d)    Notwithstanding the provisions of Subsection 1.03(a), 1.03(b) or 1.03(c) hereinabove to the contrary, Grantor may contest the validity and/or amount of any taxes, assessments or other charges referred to in said subsections at Grantor's sole cost and expense and shall not be required to pay or discharge any obligation imposed upon Grantor in any of said subsections so long as (i) Grantor shall in good faith contest the same by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale, levy or forfeiture of or upon all or any part of the Property to satisfy the same, and (ii) at Grantee's request, Grantor shall deposit in escrow with a title insurance company acceptable to Grantee, or provide other security reasonably satisfactory to Grantee, an amount equal to the amount being contested plus a reasonable additional sum to cover possible costs, interest and penalties.

5

745013.1

Deed Book **48230** Pg   563

1.04   <u>Insurance</u>.    Grantor shall keep or cause others to keep all buildings and improvements, whether now standing on the Property or hereafter erected, continuously insured against loss or damage by fire, by the perils covered by extended coverage insurance, by builder's risk insurance, by loss of rents or business interruption insurance and by malicious mischief and against such other hazards as Grantee, in its reasonable discretion, shall from time to time require, for the benefit of Grantee; all such insurance at all times shall be in an insurance company or companies in the amount of the full replacement cost of each such insured item and with terms acceptable to Grantee, with loss, if any, payable to Grantee as its interest may appear, pursuant to a non-contributory mortgagee clause which shall be satisfactory to Grantee; and forthwith upon the issuance of such policies Grantor shall deliver to Grantee receipts for the premiums paid thereon.  In the event of the foreclosure of this Deed or any other transfer of title to the Premises in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereon.  At least thirty (30) days prior to the expiration date of each policy of insurance maintained pursuant to this Section 1.04, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee.  Provided no Event of Default, as defined in Article 2 of this Security Deed, shall have occurred and be continuing hereunder, Grantor shall be authorized and empowered to adjust or compromise any loss under any insurance policies on the Property, subject to Grantee's approval of the terms of any adjustment or compromise, such approval not to be unreasonably withheld.  In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt, the Note or any Loan Document and Security Agreement, then Grantee is hereby authorized and empowered, at its option, to adjust or compromise any such loss under any insurance policies on the Property.  Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor or to Grantor and Grantee jointly.  In the event any insurance company fails to disburse directly and solely to Grantee but disburses to Grantor or to Grantor and Grantee jointly, Grantor agrees to immediately endorse and transfer such proceeds to Grantee.  In case of loss under any such policy of insurance, Grantee may, at its option, make all or any portion of the net proceeds available to Grantor for the purpose of restoration or repair of the Property or may apply the net proceeds or any portion thereof to the payment of the indebtedness hereby secured, whether due or not.

1.05    <u>Care of the Property</u>.

(a)    Grantor shall keep the improvements now or hereafter erected on the Property in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything (other than construction, ownership, operation, maintenance and repair or renovation of improvements) which shall increase the risk of fire or other hazard to the Property or any part thereof.

6

745013.1

Deed Book 48230 Pg  564

 

(b)    Grantor shall not remove or demolish nor alter the design or structural character of any building (now or hereafter erected) or other part of the Property without the prior written consent of Grantee.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor shall give prompt written notice of the same to Grantee.

(d)    Grantee or its representative is hereby authorized upon notice reasonable under the circumstances to enter upon and inspect the Property at any time during normal business hours, subject to the rights of tenants therein.

(e)    Grantor shall promptly comply in all material respects with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof.  If Grantor receives notice from any federal, state or other governmental entity that the Property fails to comply with any applicable law, ordinance, rule, order or regulation, Grantor will promptly furnish a copy of such notice to Grantee.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor shall, upon request of Grantee, promptly restore or cause to be restored the Property, or any portion thereof specified by Grantee, to the equivalent of its condition immediately prior to such damage, and if a part of the Property shall be damaged through condemnation (which damage does not result in acceleration of the indebtedness secured hereby by Grantee, as provided in Section 1.12 below), Grantor shall, upon request of Grantee, promptly restore, repair or alter the remaining part of the Property in a manner reasonably satisfactory to Grantee.  In the event Grantor is required pursuant to the provisions contained herein to restore, repair or alter the Property after fire, other casualty or condemnation, Grantee agrees that it shall make any net insurance proceeds or condemnation proceeds available to Grantor, pursuant to procedures satisfactory to Grantee, for the purpose of paying the cost of such restoration, repair or alteration.

    1.06   <u>Further Assurances</u>.  At any time, and from time to time, upon request by Grantee, Grantor shall make, execute and deliver or cause to be made, executed and delivered, to Grantee, any and all other further instruments, certificates and other documents as may be reasonably necessary in order to effectuate, complete or perfect or to continue and preserve the obligations of Grantor under the Note and the security interest of this Deed to Secure Debt and Security Agreement.  Upon any failure of Grantor so to do, Grantee may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as the agent and attorney-in-fact of Grantor so to do.  The conveyance of this Deed to Secure Debt and Security Agreement and the security interest created hereby will automatically attach, without further act, to all after-acquired land or other property attached to and/or used in the operation of the Property or any part thereof, except to the extent expressly released by Grantee.

7

745013.1

1.07    Leases Affecting the Property.  Grantor shall perform all material covenants to be performed by the landlord under any and all leases now or hereafter on the Property or any part thereof and shall not, without the written consent of Grantee, cancel, surrender or modify any such lease.  Grantor shall furnish Grantee signed copies of all leases on the Property or any part thereof promptly after their execution.    Grantor shall, by written instrument in form and substance satisfactory to Grantee, assign to Grantee Grantor's interest in each and every lease hereafter entered into by Grantor with respect to all or any part of the Property.   The terms "lease" and "leases" as used in this Section 1.07 shall include all tenancies.

1.08    Expenses.  Grantor shall pay or reimburse Grantee for all fees, costs and expenses incurred by Grantee with respect to any and all transactions contemplated herein including, without limiting the generality of the foregoing, all title and conveyancing charges, recording and filing fees, mortgage taxes, intangible personal property taxes, escrow fees, revenue and tax stamp expenses, insurance premiums (including title insurance premiums), brokerage commissions, finder's fees, court costs, surveyors', photographers', appraisers', architects', engineers', accountants' and attorneys' fees and disbursements, and will reimburse to Grantee all of the foregoing expenses paid by Grantee which have been or may be incurred by Grantee with respect to any or all of the transactions contemplated herein.  In addition to the foregoing, if any action or proceeding be commenced (including but not limited to any action to foreclose this Security Deed or to collect the Secured Indebtedness), to which action or proceeding Grantee is made a party, or in which it becomes necessary to defend or uphold the lien of this Security Deed, or in which Grantee is served with any legal process, discovery notice or subpoena relating to Grantee's lending to Grantor or accepting a guaranty from a guarantor of the Secured Indebtedness, Grantor will reimburse to Grantee all of the foregoing expenses (including, without limitation, the cost of any environmental audit) which have been or may be incurred by Grantee with respect to the foregoing.  All sums paid by Grantee for the expense of any litigation to prosecute or defend the rights and lien created by this Security Deed or to appear or to take action in response to any such legal process, discovery notice or subpoena (including attorneys' fees and disbursements) shall be paid by Grantor, upon demand by Grantee, and any such sum shall be a lien on the Property, prior to any right, or title to, interest in or claim upon the Property attaching or accruing subsequent to the lien of this Security Deed, and shall be deemed to be secured by this Security Deed.  In any action or proceeding to foreclose this Security Deed, or to recover or collect the Secured Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

1.09    Estoppel Affidavits.   Grantor shall, upon ten (10) days prior written notice, furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not, to the best knowledge of Grantor, any off-sets or defenses exist against such principal and interest, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.10    Subrogation.  Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Secured Indebtedness

8

745013.1

Deed Book 48230 Pg 566

secured hereby, notwithstanding that any instrument providing public notice of same shall be satisfied and canceled of record.

1.11 <u>Performance by Grantee of Defaults by Grantor</u>. If Grantor shall fail to pay any tax, lien, assessment or charge levied or assessed against the Property, any utility charge, whether public or private, required to be paid hereunder or any insurance premium required to be paid in connection with the procurement of insurance coverage and the delivery of the insurance policies required hereunder, or if Grantor shall fail to perform or observe any covenant, term or condition of any leases affecting all or any part of the Property or any other covenant, condition or term of this Deed to Secure Debt and Security Agreement, then Grantee, at its option, after the giving of any notice and expiration of any cure period provided for herein, may perform or observe the same, and all payments made or costs incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate of interest under the Note. Notwithstanding the foregoing, with respect to any payments permitted hereunder other than insurance premiums, Grantee shall not make any such payments without first giving Grantor ten (10) calendar days prior written notice of its intention to do so; provided, however, that if Grantee in its good faith judgment determines that its failure so to make any of the payments permitted hereunder prior to the end of such ten (10) calendar day period would adversely affect either the Property or its security interest therein, then in such event Grantee shall have the right to make such payment prior to the end of such ten (10) calendar day period, and any such payment shall be covered by the terms of this Section 1.11. Grantee shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim, premium and obligation, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof. Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof (subject to rights of tenants thereof) upon notice reasonable in the circumstances for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Grantor or any other person in possession holding under Grantor except to the extent of the gross negligence or willful misconduct of Grantee or its agents and employees.

1.12 <u>Condemnation</u>. If all or any material part of the Property shall be damaged or taken through condemnation (which term when used in this Deed to Secure Debt and Security Agreement shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable. Grantee shall be entitled to all compensation, awards and other payments or relief arising from any such condemnation. If the condemnation shall result in a taking of less than a material portion of the Property, then Grantee, after deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, shall make the net proceeds available to Grantor for the repair and/or restoration of the Property. Provided no Event of Default shall have occurred and be continuing hereunder, then Grantor shall be authorized, at its option, to commence, appear in and prosecute through counsel selected by Grantor and reasonably acceptable to Grantee, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection

9

Deed Book 48230 Pg 567

therewith, subject to Grantee's approval of the terms of any such settlement or compromise. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt and Security Agreement or any of the other Loan Documents, then Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will promptly notify Grantee, and Grantee is hereby authorized and empowered, at its option, to commence, appear in, and prosecute any such action or proceeding and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the security interest of this Deed to Secure Debt and Security Agreement. Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as Grantee may reasonably require. If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Deed, or by deed in lieu thereof, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Deed or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds. As used herein, a "material" portion of the Property shall mean any portion of the Property such that the condemnation thereof will in the reasonable judgment of Grantee substantially adversely affect the construction or operation of the project contemplated by the Loan Documents for its intended purposes or the rental income therefrom.

1.13   Operating Statements. Grantor shall maintain, or cause to be maintained, accurate records of Grantor's income and expenses in connection with the operation of the Property and shall promptly furnish to Grantee annually as of December 31 of each year, within one hundred twenty (120) days after the period to which they relate, updated financial statements, prepared in accordance with generally accepted accounting principles consistently applied, certified by Grantor and itemizing all material financial information with respect to the operation of the Property, including, but not limited to, sources of income, expenses and balance sheets of the Property for the calendar year just ended, as the case may be. Grantor will furnish to Grantee quarterly operating statements, including without limitation a balance sheet and income and expense statement (in a format acceptable to Grantee) and quarterly reports concerning the leasing of the Property, including a rent roll and a status report regarding leasing efforts, and such other reports and information, and at such intervals, regarding the Property and the financial condition of Grantor as Grantee may reasonably request. Grantor agrees to permit Grantee upon reasonable notice to inspect the books and accounts of Grantor relating to the Property during normal business hours. Failure to furnish such data shall constitute a default by Grantor hereunder.

1.14   Security Agreement.

10

745013.1

Deed Book 48230 Pg 568

(a)    With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles of Grantor referred to or described in this Deed to Secure Debt and Security Agreement, or in any way connected with the use and enjoyment of the Property, this Deed to Secure Debt and Security Agreement is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provision of the Georgia Uniform Commercial Code.  Upon request by Grantee, at any time and from time to time, a financing statement or statements reciting this Deed to Secure Debt and Security Agreement to be a security agreement affecting all of such property shall be executed by Grantor and Grantee and appropriately filed.  The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed to Secure Debt and Security Agreement shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election.  Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein or which is described or reflected in this Deed to Secure Debt and Security Agreement, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed to Secure Debt and Security Agreement, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time.  Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Deed to Secure Debt and Security Agreement or affect the priority of Grantee's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records.

(b)    Grantor warrants that the location of the collateral is or will be upon the Land (excepting materials intended to be located thereon and stored temporarily off-site).  Grantor covenants and agrees with Grantee that Grantor will furnish Grantee with notice of any change in the principal place of business of Grantor within thirty (30) calendar days of the effective date of any change and Grantor will promptly execute any financing statements or other

11

745013.1

instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its status.

1.15    <u>Construction Materials</u>. In addition to the interests in and to the Property granted, bargained, sold and conveyed by Grantor to Grantee as set forth hereinabove, Grantor has also granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto Grantee all building materials, equipment and appliances, including without limiting the generality of the foregoing, bricks, mortar, lumber and other items and equipment, which are acquired by Grantor to be placed upon or used in connection with the Property, whether or not such materials are located upon or attached to the Property, and all guaranties and warranties of workmanship or quality relating to said building materials, equipment and appliances, or other personal property and improvements and the construction and installation thereof, and all contract rights, business names and other intangibles of Grantor relating to the construction, equipment and operation of the Property; and all of the items and types of items identified in this Section 1.15 shall also be included within the meaning of the term "Property" as used in this instrument.

1.16    <u>Conveyance of the Property</u>. Grantor hereby acknowledges and confirms that the identity and expertise of Grantor are material circumstances upon which Grantee has relied in connection with the sums advanced herein, and any change in such identity or expertise could materially impair or jeopardize the security afforded to Grantee by this Deed to Secure Debt and Security Agreement for the payment of the principal amount of the Secured Indebtedness. Accordingly:

(a)    Grantor shall not, without the prior written consent of Grantee, which may be exercised arbitrarily and withheld for any reason or no reason, voluntarily or by operation of law, sell, transfer, lease to one entity in its entirety, convey or assign all or any part of the legal or equitable title to the Property, or any part of, or interest in, the Property. For purposes hereof, the change or transfer or encumbrance of the legal or equitable ownership of any interest in Grantor, or the change or transfer of any direct or indirect interest in Grantor shall constitute a transfer of the Property.

(b)    Grantor shall not, without the prior written consent of Grantee, voluntarily or by operation of law, mortgage, encumber, transfer, convey or assign the Property, or any part of, or interest in, the Property, as security for an indebtedness other than for the Secured Indebtedness.

Notwithstanding anything provided to the contrary in Section 2.01 hereinbelow, in the event Grantor breaches any term of this Section 1.16, such breach shall entitle Grantee immediately to exercise all rights and remedies provided herein, and Grantor shall not be entitled to any cure period in connection therewith.

12

745013.1

Deed Book 48230 Pg 570

    1.17   <u>Litigation</u>.  Grantor shall promptly give notice in writing to Grantee of any litigation commenced or threatened affecting the Property.

    1.18   <u>Hazardous Materials</u>.  To the best of Grantor's knowledge, the Property (including the land, surface water, ground water and all improvements) is free of the following:

        (a)   any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder;

        (b)   any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder;

        (c)   any substance the presence of which on the Property is prohibited by any law similar to those set forth in this Section 1.18;

        (d)   any asbestos fire proofing or insulation or other form of building materials or substances which may, if not properly handled, pose a threat to the health of building users and occupants;

        (e)   contamination resulting from any oil or petroleum products and their by-products;

        (f)   any polychlorinated biphenyls ("PCBs"); and

        (g)   contamination resulting from any materials which, under federal, state or local law, statute, ordinance or regulations, or court or administrative order or decree, or private agreement (hereinafter referred to collectively as "Environmental Requirements") require special handling in collection, storage, treatment or disposal because of toxic, flammable, explosive, corrosive, reactive, or radioactive properties or because of properties that may be hazardous or harmful to the environment or human health [items (a)-(g) are hereinafter referred to collectively as "Hazardous Materials"].

    Grantor hereby warrants and represents to Grantee that with regard to the Property and all activities on the Property, Grantor has not received any verbal or written notice of, and is unaware of, any violation or any action, judicial or administrative, relating to the violation, of any of the Environmental Requirements.  Further, Grantor warrants and represents to Grantee that it has not actually received, and is unaware of, any notice under any of the Environmental Requirements relating to the existence of any contamination or Hazardous Materials on the Property.  Further, Grantor warrants and represents to Grantee that it has not spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, and that to the best of Grantor's actual

13

745013.1

Deed Book 48230 Pg 571

knowledge, no other person has spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements. Grantor shall not hereafter (i) cause or suffer to occur a release, spillage, leak, uncontrolled loss, seepage or filtration of any Hazardous Materials at, upon or within the Property or any contiguous real estate in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, (ii) engage in any activity, or permit any tenant or occupant of the Property to engage in any activity, that could lead to the imposition of liability on such tenant or occupant or on Grantor or the creation of a lien on the Property, under the Environmental Requirements, except for activities involving chemicals, substances and materials routinely used in the construction of improvements such as the improvements to be constructed on the Land or used in the day-to-day operation, cleaning, maintenance and landscaping of properties such as the Property, including chemicals, substances and materials sold by tenants of the Property in the ordinary course of their business, provided that at all times Grantor shall cause any such chemicals, substances and materials to be used, stored, handled and disposed of in compliance with all applicable Environmental Requirements. If Grantor shall fail to take or cause to be taken any and all actions as may be necessary to comply with all Environmental Requirements, Grantee may make advances or payments towards performance or satisfaction of the same, but shall be under no obligation to do so; and any sums so advanced or paid, including, without limitation, all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorneys' fees, fines or other penalty payments, shall be reimbursed by Grantor to Grantee in accordance with the provisions of Section 1.11 hereinabove. Grantor shall and does hereby agree to indemnify and hold Grantee harmless from and against any and all loss, expense and charge whatsoever, including, without limitation, all court costs and attorneys' fees, arising out of or in connection with any matter or thing relating to Environmental Requirements or Hazardous Materials and arising out of events or circumstances occurring or existing prior to or during the period of Grantor's ownership of the Property, except to the extent directly caused by the gross negligence or willful misconduct of Grantee or its agents, including, without limitation, if Grantee is made a party to any action or suit brought under any of the Environmental Requirements. It is expressly agreed by Grantor that this covenant of indemnification shall survive any payment and satisfaction of the indebtedness evidenced by the Note and secured hereby and the release and satisfaction of this Deed to Secure Debt and Security Agreement and the Loan Documents, and shall continue so long as the risk or potential of any such expense, damage, loss or liability of Grantee exists. Without limiting the generality of the foregoing, the foregoing covenant of indemnification shall inure to the benefit of Grantee, in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property; provided, however, that the foregoing covenant of indemnification shall not extend to any expense, damage or loss arising directly from the acts of Grantee in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property.

    1.19   <u>Americans with Disabilities Act</u>. Grantor, at its sole cost and expense, shall promptly and at all times and from time to time comply with all requirements of Title III of the

14

745013.1

Deed Book 48230 Pg 572

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the regulations promulgated in connection therewith, 28 CFR Part 36, and the applicable ADA Accessibility Guidelines. Grantor hereby indemnifies and holds harmless Grantee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges and expenses, of any nature whatsoever suffered or incurred by Grantee, whether as grantee of this Deed to Secure Debt, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure deed or deed in lieu of foreclosure, in connection with the foregoing provision.

<u>ARTICLE 2</u>

2.01    <u>Default.</u>    The occurrence of any one or more of the following events shall constitute an "Event of Default" by Grantor hereunder:

(a)    Grantor shall fail to pay in full when due and payable any installment of principal, interest or escrow deposits, as required by the Note, this Deed to Secure Debt and Security Agreement, or otherwise, and such failure shall not be cured as provided in the notice and right to cure provision contained in the Note; or

(b)    Grantor fails duly to observe any covenant, condition or agreement of this Deed to Secure Debt and Security Agreement or of any other instrument evidencing or securing the Secured Indebtedness and such failure is not cured as provided in the notice and right to cure provision contained in the Note; or

(c)    There shall have occurred a "Default" or an "Event of Default" under and as defined in any of the other Loan Documents; or

(d)    Any warranties or representations made or agreed to be made in this Deed to Secure Debt and Security Agreement or in any other instrument evidencing or securing the Secured Indebtedness shall be breached in any material respect by Grantor or shall prove to be false or materially misleading; or

(e)    Any lien or claim of lien for labor, material, taxes, or otherwise shall be filed against the Property and not be removed, bonded, or contested in accordance with the terms of Subsection 1.03(d) above within thirty (30) calendar days after the date of Grantor's receipt of actual notice of such filing; or

(f)    A levy shall be made under any process on, or a receiver be appointed for, the Property or any other property of Grantor and such levy not be removed or receiver dismissed within sixty (60) calendar days of date of process or appointment; or

(g)    Grantor, or any current or future guarantor of the Secured Indebtedness (hereinafter called a "Guarantor") shall file a voluntary petition in bankruptcy, or any other

15

745013.1

Deed Book **48230** Pg   **573**

petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other similar relief for debtors; or

(h)     Grantor or any Guarantor shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Grantor or of any Guarantor or of all or any part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; or

(i)     Grantor or any Guarantor shall make any general assignment for the benefit of creditors; or

(j)     Grantor or any Guarantor shall commence or have instituted against it the process of dissolution, liquidation, or both dissolution and liquidation; or

(k)     (i) There shall be filed a petition against Grantor, or any Guarantor, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or (ii) there shall be filed a petition seeking the appointment of any trustee, receiver or liquidator of Grantor, or of any Guarantor, or of all or any substantial part of the Property, or of any or all of the income, rents, issues, profits or revenues thereof, unless any such petition described in the foregoing clauses (i) and (ii) of this Subsection 2.01(k) shall be dismissed within sixty (60) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

(l)     There shall occur, a breach of the covenants and provisions of Sections 1.16 or 1.18 hereof; or

(m)     Grantor shall, without the prior written consent of Grantee, voluntarily or by operation of law, transfer, convey or assign the Property, or any part of, or interest in, the Property as security for an indebtedness other than for the indebtedness secured hereby.

Any periods of grace, cure or notice provided for the benefit of Grantor in this Security Deed and in the other Loan Documents shall run concurrently and not consecutively.

2.02   Acceleration of Maturity.   If an Event of Default shall have occurred hereunder, then the whole unpaid principal sum of the Secured Indebtedness and all interest and other charges accrued and accruing under the Note, this Security Deed and the other Loan Documents shall, at the option of Grantee, become due and payable without notice or demand by Grantee, except as set forth herein, time being of the essence of this Deed to Secure Debt and Security Agreement and of the Secured Indebtedness, and thereafter such Event of Default may be cured only by the payment of such entire principal balance and all other sums due and payable

16

Deed Book 48230 Pg 574

hereunder and thereunder; and no omission on the part of Grantee to exercise such option when entitled so to do shall be considered as a waiver of such right.

2.03   <u>Right to Enter and Take Possession</u>.

(a)   If any Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Property and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor and Grantor's agents and employees wholly therefrom.

(b)   If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee, and Grantor hereby specifically consents to the entry of such judgment or decree. Grantor shall pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

(c)   Upon every such entering and taking of possession, Grantee may hold, store, use, operate, manage, control, and maintain the Property and conduct the business thereof, and, from time to time, (i) make all necessary and proper repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor, in its name or otherwise, with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee; all as Grantee may from time to time determine to be to its best advantage; and Grantee may collect and receive all of the income, rents, profits, issues and revenues of the Property, including those past due as well as those accruing thereafter and, after deducting (aa) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other charges as Grantee may determine to pay, (ee) other proper charges upon the Property or any part thereof and (ff) the compensation and expenses of attorneys and agents of Grantee, shall apply the remainder of the money so received by Grantee to the payment of the Secured Indebtedness. Notwithstanding anything provided herein to the contrary, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of any exercise by Grantee of its rights under this Deed to Secure Debt and Security Agreement, and Grantee shall be liable to account only for the rents, income, issues and profits actually received by Grantee.

17

745013.1

Deed Book 48230 Pg 575

(d)    For the purpose of carrying out the provisions of this Section 2.03, Grantor hereby constitutes and appoints Grantee the true and lawful agent and attorney in fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Property.

(e)    In the event any such Event of Default by Grantor hereunder is cured and satisfied to the satisfaction of Grantee prior to any action taken to enforce the Security Deed pursuant to Section 2.05 below such that Grantee returns possession of the Property to Grantor, the right of Grantee to take possession from time to time pursuant to this Section 2.03 shall exist upon the occurrence of any subsequent Event of Default hereunder.

(f)    In the event that Grantor and Grantee have entered into a separate Assignment of Rents, or similarly styled agreement, the terms of such agreement shall control in case any terms or provisions thereof may contradict with this Section 2.03.

2.04    Receiver.  If an Event of Default shall have occurred hereunder, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the occupancy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia.  Grantor shall pay unto Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section 2.04 and any such amounts paid by Grantor shall be added to the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

2.05    Enforcement.

(a)    If the Secured Indebtedness is not paid in full when the same shall become due, whether by acceleration or otherwise, Grantee, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of the sale and of all proceedings in connection therewith, including attorney's fees actually incurred after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county.  At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title, and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and

18

745013.1

confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor.  The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness.  In the event of any sale under this Security Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Secured Indebtedness is paid in full.  If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)   If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under subsection (a) of this Section 2.05, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

2.06   Application of Proceeds of Sale.  In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied first to the payment of expenses of such sale and of all proceedings in connection therewith, including attorney's fees actually incurred, to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by Grantee, to all other advances made by Grantee pursuant to this Security Deed, then to the accrued interest on the principal indebtedness secured hereby, then to payment of the outstanding principal balance of the Secured Indebtedness; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

2.07   Purchase by Grantee.  Upon any foreclosure sale or sale of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

2.08   Grantor as Tenant Holding Over.  In the event of any such sale under the power herein granted, Grantor (if Grantor shall remain in possession) shall be deemed a tenant holding

19

745013.1

Deed Book 48230 Pg 577

over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.09    Intentionally left blank.

2.10    Discontinuance of Proceedings and Restoration of the Parties.  In case Grantee shall have proceeded to enforce any right or remedy under this Deed to Secure Debt and Security Agreement by receiver, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

2.11    Remedies Cumulative.  No right, power or remedy conferred upon or reserved by Grantee by this Deed to Secure Debt and Security Agreement is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.12    Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws. Grantor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, exemption, homestead or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed to Secure Debt and Security Agreement, or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof.

2.13    Leases.  The failure of Grantee to make any tenants of the Property parties to any foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be, by Grantor a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

2.14    Waiver.

(a)    No delay or omission of Grantee or of any holder of this Deed to Secure Debt and Security Agreement to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default, or acquiescence therein; and every right, power and remedy given by this Deed to Secure Debt and Security Agreement to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee.  Failure on the part of Grantee

20

745013.1

Deed Book 48230 Pg 578

to complain of any act or failure to act or to declare an Event of Default hereunder, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Event of Default by Grantor. This Deed to Secure Debt and Security Agreement shall remain in full force and effect during any postponement or extension of the time of payment of the Secured Indebtedness or any part thereof.

(b)     If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from this Deed to Secure Debt and Security Agreement or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed to Secure Debt and Security Agreement; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed to Secure Debt and Security Agreement or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the conveyance and lien of this Deed to Secure Debt and Security Agreement be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

2.15   Suits to Protect the Property.  Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed to Secure Debt and Security Agreement, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee; provided, however, Grantee shall not institute or maintain any such suits or proceedings against parties other than Grantor unless and until Grantee shall have first made upon Grantor such request so to do as shall then be reasonable under the circumstances, and Grantor shall have thereupon failed either to institute and maintain such suit or to otherwise cure or correct any such matters or circumstances.

21

745013.1

Deed Book 48230 Pg 579

2.16  Grantee May File Proofs of Claim.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed to Secure Debt and Security Agreement at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17  WAIVER OF GRANTOR'S RIGHTS.  BY EXECUTION OF THIS SECURITY DEED, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

ARTICLE 3

3.01  Successors and Assigns Included in Parties.  Whenever in this Deed to Secure Debt and Security Agreement one of the parties hereto is named or referred to, the legal representatives, successors and permitted assigns of such parties shall be included and all covenants and agreements contained in this indenture by or on behalf of Grantor and by or on behalf of Grantee shall bind and inure to the benefit of their respective heirs, executors, legal representatives, successors and permitted assigns, whether so expressed or not.

22

745013.1

Deed Book 48230 Pg 580

3.02    Headings.  The headings of the sections, paragraphs and subdivisions of this Deed to Secure Debt and Security Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

3.03    Invalid Provisions to Affect No Others.  If fulfillment of any provision hereof or any transaction related hereto or to the Note, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; in no event and under no circumstances whatsoever shall Grantor be charged more than the highest lawful rate of interest permitted under applicable law; if any clause or provision herein contained operates or would prospectively operate to invalidate or impair the enforceability of this Deed to Secure Debt and Security Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Deed to Secure Debt and Security Agreement shall remain operative and in full force and effect, and shall be enforced to the greatest extent permitted by law.

3.04    Number and Gender.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

3.05    Notices.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Deed to Secure Debt and Security Agreement shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, return receipt requested, to the other party at the address of such other party set forth below or at such other address within the continental United States of America as such other party may designate by notice given in accordance herewith; provided further that no notice of change of address shall be effective until the date of receipt thereof.  The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service.  Delivery to a party or to any officer, partner, agent or employee of such party at the designated address shall constitute effective delivery for purposes hereof.  Rejection or other refusal to claim or accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of any such notice, election or demand sent as aforesaid.  Any such notice, demand, or request shall be addressed as follows:

    If to Grantee:          The Piedmont Bank
                            5270 Peachtree Parkway, Suite 116
                            Norcross, Georgia 30092
                            Attn: Monty G. Watson, President

23

745013.1

Deed Book **48230** Pg   **581**

with a
copy to:          Andersen, Tate & Carr, P.C.
1505 Lakes Parkway, Suite 100
Post Office Box 2000
Lawrenceville, Georgia 30046
Attn: Michael J. Hay, Esq.


If to Grantor:    Urban Green Duplex, LLC
400 Peachtree Industrial Boulevard
#504, Suite 5
Suwanee, Georgia 30024
Attn: Michael J. Lant

With copy to:     Foltz Martin, LLC
3525 Piedmont Road NE
Building 5, Suite 750
Atlanta, GA 30305
Attn: Mitchell T. Bagwell, Esq.

## ARTICLE 4

4.01   _Governing Law_.   This Deed to Secure Debt and Security Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Georgia, without reference to the application of the choice of law principles.

4.02   _Time of Essence_.   Time is of the essence in the performance of all obligations hereunder.

4.03   _Assignment_.   This Deed to Secure Debt and Security Agreement is assignable by Grantee and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

4.04   _Replacement of Note_.   Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such mutilation, upon surrender of the Note, Grantor shall sign in lieu thereof a new note, dated the date to which interest has been paid on the lost, stolen, destroyed or mutilated Note and otherwise of like tenor, with appropriate variations.

4.05   _Attorneys' Fees_.   Whenever in any of the Loan Documents Grantor is obligated to pay the legal fees of Grantee's counsel, such obligation shall be limited to the fees of Grantee's counsel which are actually incurred.

24

745013.1

Deed Book 48230 Pg 582

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt and Security Agreement under seal as of the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

URBAN GREEN DUPLEX, LLC,
a Georgia limited liability company

By Its Manager:  Urban Green Holdings, LLC, a
Georgia limited liability company

_____
Notary Public
My Commission Expires:

By: _____ (Seal)
     Michael J. Lant, Manager

25

745013.1

Deed Book 48230 Pg 583

Exhibit "A"

## LEGAL DESCRIPTION – LOT 1
## URBAN GREEN DUPLEX, LLC
## 0.126 ACRES OR 5,501 SQ. FT.

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 43 of the 14th District, City of Atlanta, Fulton County, Georgia and being more particularly described as follows;

To find the **TRUE POINT OF BEGINNING** commence at the northwesterly corner of the intersection of Cherokee Avenue (60' R/W) and Grant Park Place (50' R/W) thence proceed along the northerly right-of-way line of Grant Park Place North 87 degrees 01 minutes 44 seconds West for a distance of 132.52 feet to a point, said point being the **TRUE POINT OF BEGINNING.**

From the **TRUE POINT OF BEGINNING** as thus established continue along the said northerly right-of-way line of Grant Park Place line North 87 degrees 01 minutes 44 seconds West for a distance of 67.48 feet to a ½" rebar iron pin found; **THENCE** leaving Grant Park Place right-of-way line and proceed along the easterly line of a 20 foot alley North 00 degrees 30 minutes 00 seconds East for a distance of 76.27 feet to a point;     **THENCE** leaving said 20 foot alley and proceed South 89 degrees 59 minutes 30 seconds East for a distance of 77.75 feet to a point; **THENCE** South 00 degrees 30 minutes 00 seconds West for a distance of 23.00 feet to a point; **THENCE** South 86 degrees 47 minutes 59 seconds West for a distance of 10.33 feet to a point; **THENCE** South 00 degrees 31 minutes 19 seconds West for a distance of 56.18 feet to a point on the northerly right-of-way line of Grant Park Place, said point being the **TRUE POINT OF BEGINNING.**

Said property contains 0.126 acres more or less. Said property is known as Lot 1, also being the same as shown on that certain Plat prepared for Urban Green Properties, LLC, prepared by LandAir Surveying Company, by H. Tate Jones, GRLS #2339, dated October 19, 2005, last revised July 13, 2006, recorded August 16, 2006 in Plat Book 303, Page 90, Fulton County, Georgia records.

**TOGETHER WITH** easements contained in that certain Agreement Regarding Easements by and among Urban Green Cherokee Developers, LLC, Urban Green Duplex, LLC, Urban Green Live/Work, LLC and Urban Green Mixed Use, LLC, dated May 1, 2007, recorded May 3, 2007 in Deed Book 44939, Page 34, Fulton County, Georgia records.

Deed Book 48230 Pg 584
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "B"

### PERMITTED ENCUMBRANCES

### (Urban Green Duplex, LLC)

1. Taxes for the year 2009 and subsequent years, a lien not yet due and payable.

2. The following matters as shown on that certain Plat prepared for Urban Green Properties, LLC, prepared by LandAir Surveying Company, by H. Tate Jones, GRLS #2339, dated October 19, 2005, last revised July 13, 2006, recorded August 16, 2006 in Plat Book 303, Page 90, Fulton County, Georgia records.

    a. Encroachment of building eaves, concrete and building over western property line and into 20 foot alley which abuts subject property;
    b. Gas meter located in the southwestern portion of subject property;
    c. Power lines running through southeastern portion of subject property;
    d. Steps abut the southern property line; and
    e. Landscape timber wall along the southwestern property line of subject property.

3. Declaration of Agreement Regarding Zoning Application Z-05-128 and Proposed Development of Underlying Property by and between Urban Green Properties, LLC and Grant Park Neighborhood Association.

4. Rights of tenant in possession pursuant to that certain Month to Month Lease Agreement by and between Urban Green Duplex, LLC and The Zoological Foundation of Georgia, Inc.

5. Agreement Regarding Easements by and among Urban Green Cherokee Developers, LLC, Urban Green Duplex, LLC, Urban Green Live/Work, LLC and Urban Green Mixed Use, LLC, dated May 1, 2007, recorded May 3, 2007, in Deed Book 44939, Page 34, aforesaid records.

6. Subdivision Plat For: Urban Green Cherokee Developers LLC; Urban Green Mixed Use, LLC; Urban Green Live/Work, LLC; Urban Green Duplex, LLC; Republic Bank of Georgia; Chicago Title Insurance Company; Buckhead Title Abstract Co., Inc.; and The Zoological Foundation of Georgia, Inc, prepared by H. Tate Jones of Land Surveying Company, dated July 13, 2006, last revised April 30, 2007, recorded May 13, 2009, Plat Book 345, Page 104, aforesaid records.

7. Rights and obligations of tenants in possession under unrecorded leases.

745124.1

905001005

Deed Book 48230 Pg 635
Filed and Recorded Jul-30-2009 01:03pm
2009-0221624
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

⑧

AFTER RECORDING, RETURN TO:

Michael J. Hay, Esq.
ANDERSEN, TATE & CARR P.C.
Post Office Box 2000
1505 Lakes Parkway, Suite 100
Lawrenceville, Georgia 30046-2000
File No. 20511.70001 (JW)

FOLTZ MARTIN, LLC
FIVE PIEDMONT CENTER
SUITE 750
ATLANTA, GEORGIA 30305-1509

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "Security Deed" or "Deed to Secure Debt and Security Agreement"), made as of the 27th day of July, 2009, by and between **URBAN GREEN CHEROKEE DEVELOPERS, LLC**, a Georgia limited liability company (hereinafter called "Grantor"), with an address of 400 Peachtree Industrial Boulevard, #504, Suite 5, Suwanee, Georgia 30024, and **THE PIEDMONT BANK**, a Georgia banking corporation (hereinafter called "Grantee"), with an address of 5270 Peachtree Parkway, Suite 116, Norcross, Georgia 30092;

### W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "Property"):

(a)     All that certain tract or parcel of land more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land");

(b)     All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and

745015.1

Exh. C

Deed Book 48230 Pg 636

other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, chattels, inventory, accounts, consumer goods, general intangibles and personal property of every kind and nature whatsoever owned by Grantor and now or hereafter located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land and the improvements located from time to time thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions or proceeds from a  permitted sale of any of the foregoing, all tradenames, trademarks, servicemarks, logos, and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land and the improvements located thereon or any part thereof and are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Deed.  The location of the above-described collateral is also the location of the Land;

(c)     All building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, construction of the buildings and improvements upon the Land and which are now or hereafter owned by Grantor;

(d)     All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof or appurtenant to the title to the Land, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor;

(e)     All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor in and to the same; reserving only the right to Grantor to collect the same so long as an Event of Default has not occurred hereunder; and

2

745015.1

(f)   All products and/or proceeds of any of the foregoing, including without limitation, insurance proceeds.

TOGETHER WITH all and singular the rights, tenements, hereditaments, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Property hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor, including but not limited to, all rents, profits, issues and revenues of the Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving only the right to Grantor to collect the same for its own account so long as Grantor is not in default hereunder.

TO HAVE AND TO HOLD the property and all parts, rights, members and appurtenances thereof unto Grantee, its respective successors and assigns, to its or their own use IN FEE SIMPLE forever.

AND Grantor covenants that Grantor is lawfully seized and possessed of the Property and has good right to convey the same as aforesaid, that the Property and every part thereof are unencumbered except for those matters (hereinafter referred to as the "Permitted Encumbrances") expressly set forth in Exhibit "B" attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title to the Property and every part thereof against the claims of all persons and entities whomsoever, except as to the Permitted Encumbrances.

This Security Deed is intended (i) to constitute a security agreement for purposes of the Uniform Commercial Code of Georgia and (ii) to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "Secured Indebtedness"):

(a)   The debt evidenced by that certain Promissory Note dated of even date herewith, made by Urban Green Duplex, LLC ("Maker"), payable to the order of Grantee, in the principal face amount of **ONE HUNDRED THOUSAND AND NO/100THS DOLLARS ($100,000.00)**, together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced thereby, or any replacement note or notes that may be substituted for said Promissory Note after the date hereof (collectively hereinafter referred to as the "Note", with interest on the outstanding principal at the rates provided for in the Note, with the final payment being due not later than **JULY 27, 2010**; and

(b)   Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby in the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's or Maker's

3

Deed Book 48230 Pg 638

obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances); and

(c)      Any and all costs, expenses, charges, liabilities, commissions and attorneys' fees now or hereafter chargeable to or incurred by, or disbursed by, Grantee as provided for herein, or by applicable law; and

(d)      Any and all other indebtedness now or hereafter owing by Grantor or Maker to Grantee under the Loan Documents, as hereinbelow defined.

The Note, this Security Deed, and all documents, instruments, deeds, mortgages and agreements now or hereafter evidencing, securing or otherwise relating to the Note, this Security Deed, or the Secured Indebtedness, together with any and all renewals, modifications, consolidations and extensions thereof, are collectively hereinafter referred to as the "Loan Documents."

This conveyance is made subject to that certain Deed to Secure Debt and Security Agreement from Grantor in favor of Grantee of even date herewith, in the original principal amount of $430,000.00, filed for record just prior to this Deed to Secure Debt in the Fulton County, Georgia records.  It is agreed that any default thereunder may at the option of the Grantee herein or its successors in title be declared and deemed to be a default under the terms of the within instrument. The Grantor herein hereby assigns and authorizes payment to the Grantee herein or its successors in title of any surplus funds arising from foreclosure of said first security deed.

The parties hereto further expressly agree that should all monies advanced to the Maker herein pursuant to the note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt shall not become null and void by operation of law or otherwise but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor.  Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. § 44-14-80(a)(2).

PROVIDED ALWAYS, that should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, then this Security Deed shall be canceled and surrendered, but otherwise shall remain in full force and effect.

AND GRANTOR HEREBY further covenants and agrees with Grantee as follows:

4

745015.1

Deed Book 48230 Pg 639

## ARTICLE 1

1.01    <u>Payment of Indebtedness and Performance of Obligations</u>.  Grantor shall perform every obligation of Grantor contained in this Security Deed, and in each and every instrument now or hereafter evidencing or securing the Secured Indebtedness, and in other Loan Documents.

1.02    <u>Monthly Deposits</u>.  To secure further the payment of the taxes and assessments referred to in Section 1.03 below, and the payment of premiums on the insurance policies referred to in Section 1.04 below, Grantee, at its option after an Event of Default, shall have the right to require Grantor to deposit with Grantee on the first day of each and every month a sum which, in the reasonable estimation of Grantee, shall be equal to one-twelfth of the annual taxes and assessments and one-twelfth of such annual insurance premiums; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes, assessments and insurance premiums on the Property as the same accrue and are payable.  Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Grantee. If said deposits are insufficient to pay the taxes, assessments and insurance premiums in full as the same become payable, Grantor shall deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes, assessments and insurance premiums in full.  Upon any Event of Default hereunder or under the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as Grantee may elect.

1.03    <u>Taxes, Liens and Other Charges</u>.

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor shall promptly pay any such tax relating to this Security Deed, the Property or the Note; if Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment, then the entire balance of the principal sum secured by this indenture and all interest accrued thereon shall, thirty (30) days after written notice, become due and payable at the option of Grantee.  Nothing herein shall impose upon Grantor the obligation to pay any state or federal income taxes, corporate franchise taxes or net worth taxes assessed or levied against Grantee.

(b)    Grantor shall pay (to the extent the same are not paid from escrowed funds provided for in Section 1.02 hereof), before the same become delinquent, all taxes, liens, assessments and charges of every character already levied or assessed or that may hereafter be levied or assessed upon or against the Property and all utility charges for the Property, whether

5

745015.1

public or private; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c)     Grantor shall not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to remain outstanding upon any part of the Property.

(d)     Notwithstanding the provisions of Subsection 1.03(a), 1.03(b) or 1.03(c) hereinabove to the contrary, Grantor may contest the validity and/or amount of any taxes, assessments or other charges referred to in said subsections at Grantor's sole cost and expense and shall not be required to pay or discharge any obligation imposed upon Grantor in any of said subsections so long as (i) Grantor shall in good faith contest the same by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale, levy or forfeiture of or upon all or any part of the Property to satisfy the same, and (ii) at Grantee's request, Grantor shall deposit in escrow with a title insurance company acceptable to Grantee, or provide other security reasonably satisfactory to Grantee, an amount equal to the amount being contested plus a reasonable additional sum to cover possible costs, interest and penalties.

1.04   Insurance.  Grantor shall keep or cause others to keep all buildings and improvements, whether now standing on the Property or hereafter erected, continuously insured against loss or damage by fire, by the perils covered by extended coverage insurance, by builder's risk insurance, by loss of rents or business interruption insurance and by malicious mischief and against such other hazards as Grantee, in its reasonable discretion, shall from time to time require, for the benefit of Grantee; all such insurance at all times shall be in an insurance company or companies in the amount of the full replacement cost of each such insured item and with terms acceptable to Grantee, with loss, if any, payable to Grantee as its interest may appear, pursuant to a non-contributory mortgagee clause which shall be satisfactory to Grantee; and forthwith upon the issuance of such policies Grantor shall deliver to Grantee receipts for the premiums paid thereon.  In the event of the foreclosure of this Deed or any other transfer of title to the Property in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereon.  At least thirty (30) days prior to the expiration date of each policy of insurance maintained pursuant to this Section 1.04, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee.  Provided no Event of Default, as defined in Article 2 of this Security Deed, shall have occurred and be continuing hereunder, Grantor shall be authorized and empowered to adjust or compromise any loss under any insurance policies on the Property, subject to Grantee's approval of the terms of any adjustment or compromise, such approval not to be unreasonably withheld. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt, the Note or any Loan Document and Security Agreement, then Grantee is hereby authorized and empowered, at its option, to adjust or compromise any such loss under any

6

insurance policies on the Property. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor or to Grantor and Grantee jointly. In the event any insurance company fails to disburse directly and solely to Grantee but disburses to Grantor or to Grantor and Grantee jointly, Grantor agrees to immediately endorse and transfer such proceeds to Grantee. In case of loss under any such policy of insurance, Grantee may, at its option, make all or any portion of the net proceeds available to Grantor for the purpose of restoration or repair of the Property or may apply the net proceeds or any portion thereof to the payment of the indebtedness hereby secured, whether due or not.

1.05    Care of the Property.

(a)    Grantor shall keep the improvements now or hereafter erected on the Property in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything (other than construction, ownership, operation, maintenance and repair or renovation of improvements) which shall increase the risk of fire or other hazard to the Property or any part thereof.

(b)    Grantor shall not remove or demolish nor alter the design or structural character of any building (now or hereafter erected) or other part of the Property without the prior written consent of Grantee.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor shall give prompt written notice of the same to Grantee.

(d)    Grantee or its representative is hereby authorized upon notice reasonable under the circumstances to enter upon and inspect the Property at any time during normal business hours, subject to the rights of tenants therein.

(e)    Grantor shall promptly comply in all material respects with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof. If Grantor receives notice from any federal, state or other governmental entity that the Property fails to comply with any applicable law, ordinance, rule, order or regulation, Grantor will promptly furnish a copy of such notice to Grantee.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor shall, upon request of Grantee, promptly restore or cause to be restored the Property, or any portion thereof specified by Grantee, to the equivalent of its condition immediately prior to such damage, and if a part of the Property shall be damaged through condemnation (which damage does not result in acceleration of the indebtedness secured hereby by Grantee, as provided in Section 1.12 below), Grantor shall, upon request of Grantee, promptly restore, repair or alter the remaining part of the Property in a manner reasonably satisfactory to Grantee. In the event Grantor is required pursuant to the provisions contained herein to restore, repair or alter the Property after fire, other casualty or condemnation, Grantee agrees that it shall make any net

7

745015.1

Deed Book 48230 Pg 642

insurance proceeds or condemnation proceeds available to Grantor, pursuant to procedures satisfactory to Grantee, for the purpose of paying the cost of such restoration, repair or alteration.

1.06   Further Assurances.  At any time, and from time to time, upon request by Grantee, Grantor shall make, execute and deliver or cause to be made, executed and delivered, to Grantee, any and all other further instruments, certificates and other documents as may be reasonably necessary in order to effectuate, complete or perfect or to continue and preserve the obligations of Grantor under the Note and the security interest of this Deed to Secure Debt and Security Agreement.  Upon any failure of Grantor so to do, Grantee may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as the agent and attorney-in-fact of Grantor so to do.  The conveyance of this Deed to Secure Debt and Security Agreement and the security interest created hereby will automatically attach, without further act, to all after-acquired land or other property attached to and/or used in the operation of the Property or any part thereof, except to the extent expressly released by Grantee.

1.07   Leases Affecting the Property.  Grantor shall perform all material covenants to be performed by the landlord under any and all leases now or hereafter on the Property or any part thereof and shall not, without the written consent of Grantee, cancel, surrender or modify any such lease.  Grantor shall furnish Grantee signed copies of all leases on the Property or any part thereof promptly after their execution.   Grantor shall, by written instrument in form and substance satisfactory to Grantee, assign to Grantee Grantor's interest in each and every lease hereafter entered into by Grantor with respect to all or any part of the Property.  The terms "lease" and "leases" as used in this Section 1.07 shall include all tenancies.

1.08   Expenses.  Grantor shall pay or reimburse Grantee for all fees, costs and expenses incurred by Grantee with respect to any and all transactions contemplated herein including, without limiting the generality of the foregoing, all title and conveyancing charges, recording and filing fees, mortgage taxes, intangible personal property taxes, escrow fees, revenue and tax stamp expenses, insurance premiums (including title insurance premiums), brokerage commissions, finder's fees, court costs, surveyors', photographers', appraisers', architects', engineers', accountants' and attorneys' fees and disbursements, and will reimburse to Grantee all of the foregoing expenses paid by Grantee which have been or may be incurred by Grantee with respect to any or all of the transactions contemplated herein.  In addition to the foregoing, if any action or proceeding be commenced (including but not limited to any action to foreclose this Security Deed or to collect the Secured Indebtedness), to which action or proceeding Grantee is made a party, or in which it becomes necessary to defend or uphold the lien of this Security Deed, or in which Grantee is served with any legal process, discovery notice or subpoena relating to Grantee's lending to Grantor or accepting a guaranty from a guarantor of the Secured Indebtedness, Grantor will reimburse to Grantee all of the foregoing expenses (including, without limitation, the cost of any environmental audit) which have been or may be incurred by Grantee with respect to the foregoing.  All sums paid by Grantee for the expense of any litigation to prosecute or defend the rights and lien created by this Security Deed or to appear or to take action

8

745015.1

Deed Book 48230 Pg 643

in response to any such legal process, discovery notice or subpoena (including attorneys' fees and disbursements) shall be paid by Grantor, upon demand by Grantee, and any such sum shall be a lien on the Property, prior to any right, or title to, interest in or claim upon the Property attaching or accruing subsequent to the lien of this Security Deed, and shall be deemed to be secured by this Security Deed. In any action or proceeding to foreclose this Security Deed, or to recover or collect the Secured Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

1.09   Estoppel Affidavits.   Grantor shall, upon ten (10) days prior written notice, furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not, to the best knowledge of Grantor, any off-sets or defenses exist against such principal and interest, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.10   Subrogation.   Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Secured Indebtedness secured hereby, notwithstanding that any instrument providing public notice of same shall be satisfied and canceled of record.

1.11   Performance by Grantee of Defaults by Grantor.   If Grantor shall fail to pay any tax, lien, assessment or charge levied or assessed against the Property, any utility charge, whether public or private, required to be paid hereunder or any insurance premium required to be paid in connection with the procurement of insurance coverage and the delivery of the insurance policies required hereunder, or if Grantor shall fail to perform or observe any covenant, term or condition of any leases affecting all or any part of the Property or any other covenant, condition or term of this Deed to Secure Debt and Security Agreement, then Grantee, at its option, after the giving of any notice and expiration of any cure period provided for herein, may perform or observe the same, and all payments made or costs incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate of interest under the Note.  Notwithstanding the foregoing, with respect to any payments permitted hereunder other than insurance premiums, Grantee shall not make any such payments without first giving Grantor ten (10) calendar days prior written notice of its intention to do so; provided, however, that if Grantee in its good faith judgment determines that its failure so to make any of the payments permitted hereunder prior to the end of such ten (10) calendar day period would adversely affect either the Property or its security interest therein, then in such event Grantee shall have the right to make such payment prior to the end of such ten (10) calendar day period, and any such payment shall be covered by the terms of this Section 1.11.  Grantee shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim, premium and obligation, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof.  Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof (subject to rights of tenants thereof) upon notice reasonable in the circumstances for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby

9

745015.1

Deed Book 48230 Pg 644

becoming liable to Grantor or any other person in possession holding under Grantor except to the extent of the gross negligence or willful misconduct of Grantee or its agents and employees.

1.12    Condemnation. If all or any material part of the Property shall be damaged or taken through condemnation (which term when used in this Deed to Secure Debt and Security Agreement shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable. Grantee shall be entitled to all compensation, awards and other payments or relief arising from any such condemnation. If the condemnation shall result in a taking of less than a material portion of the Property, then Grantee, after deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, shall make the net proceeds available to Grantor for the repair and/or restoration of the Property. Provided no Event of Default shall have occurred and be continuing hereunder, then Grantor shall be authorized, at its option, to commence, appear in and prosecute through counsel selected by Grantor and reasonably acceptable to Grantee, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, subject to Grantee's approval of the terms of any such settlement or compromise. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt and Security Agreement or any of the other Loan Documents, then Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will promptly notify Grantee, and Grantee is hereby authorized and empowered, at its option, to commence, appear in, and prosecute any such action or proceeding and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the security interest of this Deed to Secure Debt and Security Agreement. Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as Grantee may reasonably require. If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Deed, or by deed in lieu thereof, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Deed or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds. As used herein, a "material" portion of the Property shall mean any portion of the Property such that the condemnation thereof will in the reasonable judgment of Grantee substantially adversely affect the construction or operation of the project contemplated by the Loan Documents for its intended purposes or the rental income therefrom.

1.13    Operating Statements. Grantor shall maintain, or cause to be maintained, accurate records of Grantor's income and expenses in connection with the operation of the Property and

10

Deed Book 48230 Pg 645

shall promptly furnish to Grantee annually, within one hundred twenty (120) days after the period to which they relate, updated financial statements, prepared in accordance with generally accepted accounting principles consistently applied, certified by Grantor and itemizing all material financial information with respect to the operation of the Property, including, but not limited to, sources of income, expenses and balance sheets of the Property for the calendar year just ended, as the case may be. Grantor will furnish to Grantee quarterly operating statements (in a format acceptable to Grantee) and quarterly reports concerning the leasing of the Property, including a rent roll and a status report regarding leasing efforts, and such other reports and information, and at such intervals, regarding the Property and the financial condition of Grantor as Grantee may reasonably request. Grantor agrees to permit Grantee upon reasonable notice to inspect the books and accounts of Grantor relating to the Property during normal business hours. Failure to furnish such data shall constitute a default by Grantor hereunder.

1.14    Security Agreement.

(a)    With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles of Grantor referred to or described in this Deed to Secure Debt and Security Agreement, or in any way connected with the use and enjoyment of the Property, this Deed to Secure Debt and Security Agreement is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provision of the Georgia Uniform Commercial Code. Upon request by Grantee, at any time and from time to time, a financing statement or statements reciting this Deed to Secure Debt and Security Agreement to be a security agreement affecting all of such property shall be executed by Grantor and Grantee and appropriately filed. The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed to Secure Debt and Security Agreement shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election. Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property and adapted for use therein or which is described or reflected in this Deed to Secure Debt and Security Agreement, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed to Secure Debt and Security Agreement, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time. Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present or future lease or rights to income

11

Deed Book 48230 Pg 646

growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Deed to Secure Debt and Security Agreement or affect the priority of Grantee's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records.

      (b)    Grantor warrants that the location of the collateral is or will be upon the Land (excepting materials intended to be located thereon and stored temporarily off-site). Grantor covenants and agrees with Grantee that Grantor will furnish Grantee with notice of any change in the principal place of business of Grantor within thirty (30) calendar days of the effective date of any change and Grantor will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its status.

    1.15   <u>Construction Materials</u>.  In addition to the interests in and to the Property granted, bargained, sold and conveyed by Grantor to Grantee as set forth hereinabove, Grantor has also granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto Grantee all building materials, equipment and appliances, including without limiting the generality of the foregoing, bricks, mortar, lumber and other items and equipment, which are acquired by Grantor to be placed upon or used in connection with the Property, whether or not such materials are located upon or attached to the Property, and all guaranties and warranties of workmanship or quality relating to said building materials, equipment and appliances, or other personal property and improvements and the construction and installation thereof, and all contract rights, business names and other intangibles of Grantor relating to the construction, equipment and operation of the Property; and all of the items and types of items identified in this Section 1.15 shall also be included within the meaning of the term "Property" as used in this instrument.

    1.16   <u>Conveyance of the Property</u>.  Grantor hereby acknowledges and confirms that the identity and expertise of Grantor are material circumstances upon which Grantee has relied in connection with the sums advanced herein, and any change in such identity or expertise could materially impair or jeopardize the security afforded to Grantee by this Deed to Secure Debt and Security Agreement for the payment of the principal amount of the Secured Indebtedness. Accordingly:

      (a)    Grantor shall not, without the prior written consent of Grantee, which may be exercised arbitrarily and withheld for any reason or no reason, voluntarily or by operation of law, sell, transfer, lease to one entity in its entirety, convey or assign all or any part of the legal or equitable title to the Property, or any part of, or interest in, the Property.  For purposes hereof, the change or transfer or encumbrance of the legal or equitable ownership of any interest in Grantor,

12

745015.1

Deed Book 48230 Pg 647

or the change or transfer of any direct or indirect interest in Grantor shall constitute a transfer of the Property.

(b)     Grantor shall not, without the prior written consent of Grantee, voluntarily or by operation of law, mortgage, encumber, transfer, convey or assign the Property, or any part of, or interest in, the Property, as security for an indebtedness other than for the Secured Indebtedness.

Notwithstanding anything provided to the contrary in Section 2.01 hereinbelow, in the event Grantor breaches any term of this Section 1.16, such breach shall entitle Grantee immediately to exercise all rights and remedies provided herein, and Grantor shall not be entitled to any cure period in connection therewith.

1.17     Litigation.     Grantor shall promptly give notice in writing to Grantee of any litigation commenced or threatened affecting the Property.

1.18     Hazardous Materials.     To the best of Grantor's knowledge, the Property (including the land, surface water, ground water and all improvements) is free of the following:

(a)     any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder;

(b)     any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder;

(c)     any substance the presence of which on the Property is prohibited by any law similar to those set forth in this Section 1.18;

(d)     any asbestos fire proofing or insulation or other form of building materials or substances which may, if not properly handled, pose a threat to the health of building users and occupants;

(e)     contamination resulting from any oil or petroleum products and their by-products;

(f)     any polychlorinated biphenyls ("PCBs"); and

(g)     contamination resulting from any materials which, under federal, state or local law, statute, ordinance or regulations, or court or administrative order or decree, or private agreement (hereinafter referred to collectively as "Environmental Requirements") require special handling in collection, storage, treatment or disposal because of toxic, flammable, explosive, corrosive, reactive, or radioactive properties or because of properties that may be hazardous or

13

745015.1

harmful to the environment or human health [items (a)-(g) are hereinafter referred to collectively as "Hazardous Materials"].

Grantor hereby warrants and represents to Grantee that with regard to the Property and all activities on the Property, Grantor has not received any verbal or written notice of, and is unaware of, any violation or any action, judicial or administrative, relating to the violation, of any of the Environmental Requirements. Further, Grantor warrants and represents to Grantee that it has not actually received, and is unaware of, any notice under any of the Environmental Requirements relating to the existence of any contamination or Hazardous Materials on the Property. Further, Grantor warrants and represents to Grantee that it has not spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, and that to the best of Grantor's actual knowledge, no other person has spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements. Grantor shall not hereafter (i) cause or suffer to occur a release, spillage, leak, uncontrolled loss, seepage or filtration of any Hazardous Materials at, upon or within the Property or any contiguous real estate in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, (ii) engage in any activity, or permit any tenant or occupant of the Property to engage in any activity, that could lead to the imposition of liability on such tenant or occupant or on Grantor or the creation of a lien on the Property, under the Environmental Requirements, except for activities involving chemicals, substances and materials routinely used in the construction of improvements such as the improvements to be constructed on the Land or used in the day-to-day operation, cleaning, maintenance and landscaping of properties such as the Property, including chemicals, substances and materials sold by tenants of the Property in the ordinary course of their business, provided that at all times Grantor shall cause any such chemicals, substances and materials to be used, stored, handled and disposed of in compliance with all applicable Environmental Requirements. If Grantor shall fail to take or cause to be taken any and all actions as may be necessary to comply with all Environmental Requirements, Grantee may make advances or payments towards performance or satisfaction of the same, but shall be under no obligation to do so; and any sums so advanced or paid, including, without limitation, all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorneys' fees, fines or other penalty payments, shall be reimbursed by Grantor to Grantee in accordance with the provisions of Section 1.11 hereinabove. Grantor shall and does hereby agree to indemnify and hold Grantee harmless from and against any and all loss, expense and charge whatsoever, including, without limitation, all court costs and attorneys' fees, arising out of or in connection with any matter or thing relating to Environmental Requirements or Hazardous Materials and arising out of events or circumstances occurring or existing prior to or during the period of Grantor's ownership of the Property, except to the extent directly caused by the gross negligence or willful misconduct of Grantee or its agents, including, without limitation, if Grantee is made a party to any action or

14

Deed Book 48230 Pg 649

suit brought under any of the Environmental Requirements. It is expressly agreed by Grantor that this covenant of indemnification shall survive any payment and satisfaction of the indebtedness evidenced by the Note and secured hereby and the release and satisfaction of this Deed to Secure Debt and Security Agreement and the Loan Documents, and shall continue so long as the risk or potential of any such expense, damage, loss or liability of Grantee exists. Without limiting the generality of the foregoing, the foregoing covenant of indemnification shall inure to the benefit of Grantee, in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property; provided, however, that the foregoing covenant of indemnification shall not extend to any expense, damage or loss arising directly from the acts of Grantee in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property.

1.19    Americans with Disabilities Act. Grantor, at its sole cost and expense, shall promptly and at all times and from time to time comply with all requirements of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the regulations promulgated in connection therewith, 28 CFR Part 36, and the applicable ADA Accessibility Guidelines. Grantor hereby indemnifies and holds harmless Grantee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges and expenses, of any nature whatsoever suffered or incurred by Grantee, whether as grantee of this Deed to Secure Debt, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure deed or deed in lieu of foreclosure, in connection with the foregoing provision.

## ARTICLE 2

2.01    Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" by Grantor hereunder:

(a)    Maker or Grantor shall fail to pay in full when due and payable any installment of principal, interest or escrow deposits, as required by the Note, this Deed to Secure Debt and Security Agreement (a "Monetary Default"), or otherwise, and such failure shall not be cured as provided in the notice and right to cure provision contained in the Note; or

(b)    Grantor fails duly to observe any covenant, condition or agreement of this Deed to Secure Debt and Security Agreement or of any other instrument evidencing or securing the Secured Indebtedness (a "Non-Monetary Default") and such failure is not cured as provided in the notice and right to cure provision contained in the Note; or

(c)    There shall have occurred a "Default" or an "Event of Default" under and as defined in any of the other Loan Documents; or

(d)    Any warranties or representations made or agreed to be made in this Deed to Secure Debt and Security Agreement or in any other instrument evidencing or securing the

15

745015.1

Deed Book 48230 Pg 650

Secured Indebtedness shall be breached in any material respect by Grantor or Maker or shall prove to be false or materially misleading; or

(e)     Any lien or claim of lien for labor, material, taxes, or otherwise shall be filed against the Property and not be removed, bonded, or contested in accordance with the terms of Subsection 1.03(d) above within thirty (30) calendar days after the date of Grantor's receipt of actual notice of such filing; or

(f)     A levy shall be made under any process on, or a receiver be appointed for, the Property or any other property of Grantor or Maker and such levy not be removed or receiver dismissed within sixty (60) calendar days of date of process or appointment; or

(g)     Grantor, Maker or any current or future guarantor of the Secured Indebtedness (hereinafter called a "Guarantor") shall file a voluntary petition in bankruptcy, or any other petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other similar relief for debtors; or

(h)     Grantor, Maker or any Guarantor shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Grantor or of any Guarantor or of all or any part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; or

(i)     Grantor, Maker or any Guarantor shall make any general assignment for the benefit of creditors; or

(j)     Grantor, Maker or any Guarantor shall commence or have instituted against it the process of dissolution, liquidation, or both dissolution and liquidation; or

(k)     (i) There shall be filed a petition against Grantor, Maker or any Guarantor, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or (ii) there shall be filed a petition seeking the appointment of any trustee, receiver or liquidator of Grantor, Maker, or of any Guarantor, or of all or any substantial part of the Property, or of any or all of the income, rents, issues, profits or revenues thereof unless such petition described in the foregoing clauses (i) and (ii) of this Subsection 2.01(k) shall be dismissed within sixty (60) days after such filing, but in any event prior to the entry of an order, judgment or decree approving susch petition; or

(l)     There shall occur a breach of the covenants and provisions of Sections 1.16 or 1.18 hereof; or

16

745015.1

Deed Book 48230 Pg 651

(m)    Grantor shall, without the prior written consent of Grantee, voluntarily or by operation of law, transfer, convey or assign the Property, or any part of, or interest in, the Property as security for an indebtedness other than for the indebtedness secured hereby; or

(n)    Grantor and/or Guarantors shall, without the prior written consent of Grantee, sell or otherwise dispose of all or substantially all of its respective assets.

Any periods of grace, cure or notice provided for the benefit of Grantor in this Security Deed and in the other Loan Documents shall run concurrently and not consecutively.

2.02    Acceleration of Maturity.    If an Event of Default shall have occurred hereunder, then the whole unpaid principal sum of the Secured Indebtedness and all interest and other charges accrued and accruing under the Note, this Security Deed and the other Loan Documents shall, at the option of Grantee, become due and payable without notice or demand by Grantee, except as set forth herein, time being of the essence of this Deed to Secure Debt and Security Agreement and of the Secured Indebtedness, and thereafter such Event of Default may be cured only by the payment of such entire principal balance and all other sums due and payable hereunder and thereunder; and no omission on the part of Grantee to exercise such option when entitled so to do shall be considered as a waiver of such right.

2.03    Right to Enter and Take Possession.

(a)    If any Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Property and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor and Grantor's agents and employees wholly therefrom.

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee, and Grantor hereby specifically consents to the entry of such judgment or decree. Grantor shall pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

(c)    Upon every such entering and taking of possession, Grantee may hold, store, use, operate, manage, control, and maintain the Property and conduct the business thereof, and, from time to time, (i) make all necessary and proper repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor, in its name or

17

Deed Book **48230** Pg **652**

otherwise, with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee; all as Grantee may from time to time determine to be to its best advantage; and Grantee may collect and receive all of the income, rents, profits, issues and revenues of the Property, including those past due as well as those accruing thereafter and, after deducting (aa) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other charges as Grantee may determine to pay, (ee) other proper charges upon the Property or any part thereof and (ff) the compensation and expenses of attorneys and agents of Grantee, shall apply the remainder of the money so received by Grantee to the payment of the Secured Indebtedness. Notwithstanding anything provided herein to the contrary, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of any exercise by Grantee of its rights under this Deed to Secure Debt and Security Agreement, and Grantee shall be liable to account only for the rents, income, issues and profits actually received by Grantee.

(d)    For the purpose of carrying out the provisions of this Section 2.03, Grantor hereby constitutes and appoints Grantee the true and lawful agent and attorney in fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Property.

(e)    In the event any such Event of Default by Grantor hereunder is cured and satisfied to the satisfaction of Grantee prior to any action taken to enforce the Security Deed pursuant to Section 2.05 below such that Grantee returns possession of the Property to Grantor, the right of Grantee to take possession from time to time pursuant to this Section 2.03 shall exist upon the occurrence of any subsequent Event of Default hereunder.

(f)    In the event that Grantor and Grantee have entered into a separate Assignment of Rents, or similarly styled agreement, the terms of such agreement shall control in case any terms or provisions thereof may contradict with this Section 2.03.

2.04    _Receiver._  If an Event of Default shall have occurred hereunder, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the occupancy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor shall pay unto Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section 2.04 and any such amounts paid by Grantor shall be added to the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

18

745015.1

Deed Book 48230 Pg 653

2.05    Enforcement.

(a)    If the Secured Indebtedness is not paid in full when the same shall become due, whether by acceleration or otherwise, Grantee, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of the sale and of all proceedings in connection therewith, including attorney's fees actually incurred after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title, and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness. In the event of any sale under this Security Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Secured Indebtedness is paid in full. If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)    If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under subsection (a) of this Section 2.05, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

19

745015.1

Deed Book 48230 Pg 654

2.06    Application of Proceeds of Sale. In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied first to the payment of expenses of such sale and of all proceedings in connection therewith, including attorney's fees actually incurred, to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by Grantee, to all other advances made by Grantee pursuant to this Security Deed, then to the accrued interest on the principal indebtedness secured hereby, then to payment of the outstanding principal balance of the Secured Indebtedness; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

2.07    Purchase by Grantee. Upon any foreclosure sale or sale of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

2.08    Grantor as Tenant Holding Over. In the event of any such sale under the power herein granted, Grantor (if Grantor shall remain in possession) shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.09    Intentionally left blank.

2.10    Discontinuance of Proceedings and Restoration of the Parties. In case Grantee shall have proceeded to enforce any right or remedy under this Deed to Secure Debt and Security Agreement by receiver, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

2.11    Remedies Cumulative. No right, power or remedy conferred upon or reserved by Grantee by this Deed to Secure Debt and Security Agreement is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.12    Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws. Grantor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, exemption, homestead or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed to Secure Debt and Security Agreement, or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers

20

745015.1

Deed Book 48230 Pg 655

threat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof.

    2.13   <u>Leases</u>. The failure of Grantee to make any tenants of the Property parties to any foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be, by Grantor a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

    2.14   <u>Waiver</u>.

       (a)   No delay or omission of Grantee or of any holder of this Deed to Secure Debt and Security Agreement to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default, or acquiescence therein; and every right, power and remedy given by this Deed to Secure Debt and Security Agreement to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee. Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default hereunder, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Event of Default by Grantor. This Deed to Secure Debt and Security Agreement shall remain in full force and effect during any postponement or extension of the time of payment of the Secured Indebtedness or any part thereof.

       (b)   If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from this Deed to Secure Debt and Security Agreement or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed to Secure Debt and Security Agreement; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed to Secure Debt and Security Agreement or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the conveyance and lien of this Deed to Secure Debt and Security Agreement be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Indebtedness, or with reference to any of the terms,

21

745015.1

Deed Book 48230 Pg 656

covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

2.15    <u>Suits to Protect the Property</u>.    Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed to Secure Debt and Security Agreement, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee; provided, however, Grantee shall not institute or maintain any such suits or proceedings against parties other than Grantor unless and until Grantee shall have first made upon Grantor such request so to do as shall then be reasonable under the circumstances, and Grantor shall have thereupon failed either to institute and maintain such suit or to otherwise cure or correct any such matters or circumstances.

2.16    <u>Grantee May File Proofs of Claim</u>.    In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed to Secure Debt and Security Agreement at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17    <u>WAIVER OF GRANTOR'S RIGHTS</u>.    BY EXECUTION OF THIS SECURITY DEED, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR

22

745015.1

Deed Book 48230 Pg  657

BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

## ARTICLE 3

3.01    <u>Successors and Assigns Included in Parties</u>.  Whenever in this Deed to Secure Debt and Security Agreement one of the parties hereto is named or referred to, the legal representatives, successors and permitted assigns of such parties shall be included and all covenants and agreements contained in this indenture by or on behalf of Grantor and by or on behalf of Grantee shall bind and inure to the benefit of their respective heirs, executors, legal representatives, successors and permitted assigns, whether so expressed or not.

3.02    <u>Headings</u>.  The headings of the sections, paragraphs and subdivisions of this Deed to Secure Debt and Security Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

3.03    <u>Invalid Provisions to Affect No Others</u>.  If fulfillment of any provision hereof or any transaction related hereto or to the Note, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then <u>ipso</u> <u>facto</u>, the obligation to be fulfilled shall be reduced to the limit of such validity; in no event and under no circumstances whatsoever shall Grantor be charged more than the highest lawful rate of interest permitted under applicable law; if any clause or provision herein contained operates or would prospectively operate to invalidate or impair the enforceability of this Deed to Secure Debt and Security Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Deed to Secure Debt and Security Agreement shall remain operative and in full force and effect, and shall be enforced to the greatest extent permitted by law.

3.04    <u>Number and Gender</u>.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

3.05    <u>Notices</u>.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Deed to Secure Debt and Security Agreement shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, return receipt requested, to the other party at the address of such other party set forth below or at such other address within the continental United States of America as

23

745015.1

such other party may designate by notice given in accordance herewith; provided further that no notice of change of address shall be effective until the date of receipt thereof. The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Delivery to a party or to any officer, partner, agent or employee of such party at the designated address shall constitute effective delivery for purposes hereof. Rejection or other refusal to claim or accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of any such notice, election or demand sent as aforesaid. Any such notice, demand, or request shall be addressed as follows:

<table>
<tr><td>If to Grantee:</td><td>The Piedmont Bank<br>5270 Peachtree Parkway, Suite 116<br>Norcross, Georgia 30092<br>Attn: Monty G. Watson, President</td></tr>
<tr><td>with a<br>copy to:</td><td>Andersen, Tate & Carr, P.C.<br>1505 Lakes Parkway, Suite 100<br>Post Office Box 2000<br>Lawrenceville, Georgia 30046<br>Attn: Michael J. Hay, Esq.</td></tr>
<tr><td>If to Grantor:</td><td>Urban Green Cherokee Developers, LLC<br>400 Peachtree Industrial Boulevard<br>#504, Suite 5<br>Suwanee, Georgia 30024<br>Attn: Michael J. Lant</td></tr>
<tr><td>With a copy to:</td><td>Foltz Martin, LLC<br>3525 Piedmont Road NE<br>Building 5, Suite 750<br>Atlanta, GA 30305<br>Attn: Mitchell T. Bagwell, Esq.</td></tr>
</table>

## ARTICLE 4

4.01    <u>Governing Law</u>.  This Deed to Secure Debt and Security Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Georgia, without reference to the application of the choice of law principles.

24

745015.1

Deed Book 48230 Pg 659

    4.02    <u>Time of Essence</u>.  Time is of the essence in the performance of all obligations hereunder.

    4.03    <u>Assignment</u>.  This Deed to Secure Debt and Security Agreement is assignable by Grantee and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

    4.04    <u>Replacement of Note</u>.  Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such mutilation, upon surrender of the Note, Grantor shall sign in lieu thereof a new note, dated the date to which interest has been paid on the lost, stolen, destroyed or mutilated Note and otherwise of like tenor, with appropriate variations.

    4.05    <u>Attorneys' Fees</u>.  Whenever in any of the Loan Documents Grantor is obligated to pay the legal fees of Grantee's counsel, such obligation shall be limited to the fees of Grantee's counsel which are actually incurred.

745015.1

Deed Book 48230 Pg 660

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt and Security Agreement under seal as of the day and year first above written.

GRANTOR:

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

URBAN GREEN CHEROKEE DEVELOPERS,
 LLC, a Georgia limited liability company

By Its Manager:  Urban Green Holdings, LLC, a
Georgia limited liability company

_____
Notary Public
My Commission Expires:

By: _____(Seal)
      Michael J. Lant, Manager

*[Notary seal: MICHAEL J. HAY, NOTARY PUBLIC, GEORGIA, GWINNETT COUNTY, EXPIRES AUG. 7, 2012]*

26

745015.1

Deed Book 48230 Pg 661

# EXHIBIT "B"

## PERMITTED ENCUMBRANCES

### (Urban Green Duplex, LLC)

1. Taxes for the year 2009 and subsequent years, a lien not yet due and payable.

2. The following matters as shown on that certain Plat prepared for Urban Green Properties, LLC, prepared by LandAir Surveying Company, by H. Tate Jones, GRLS #2339, dated October 19, 2005, last revised July 13, 2006, recorded August 16, 2006 in Plat Book 303, Page 90, Fulton County, Georgia records.

    a.  Encroachment of building eaves, concrete and building over western property line and into 20 foot alley which abuts subject property;
    b.  Gas meter located in the southwestern portion of subject property;
    c.  Power lines running through southeastern portion of subject property;
    d.  Steps abut the southern property line; and
    e.  Landscape timber wall along the southwestern property line of subject property.

3. Declaration of Agreement Regarding Zoning Application Z-05-128 and Proposed Development of Underlying Property by and between Urban Green Properties, LLC and Grant Park Neighborhood Association.

4. Rights of tenant in possession pursuant to that certain Month to Month Lease Agreement by and between Urban Green Duplex, LLC and The Zoological Foundation of Georgia, Inc.

5. Agreement Regarding Easements by and among Urban Green Cherokee Developers, LLC, Urban Green Duplex, LLC, Urban Green Live/Work, LLC and Urban Green Mixed Use, LLC, dated May 1, 2007, recorded May 3, 2007, in Deed Book 44939, Page 34, aforesaid records.

6. Subdivision Plat For: Urban Green Cherokee Developers LLC; Urban Green Mixed Use, LLC; Urban Green Live/Work, LLC; Urban Green Duplex, LLC; Republic Bank of Georgia; Chicago Title Insurance Company; Buckhead Title Abstract Co., Inc.; and The Zoological Foundation of Georgia, Inc, prepared by H. Tate Jones of Land Surveying Company, dated July 13, 2006, last revised April 30, 2007, recorded May 13, 2009, Plat Book 345, Page 104, aforesaid records.

7. Rights and obligations of tenants in possession under unrecorded leases.

745124.1

Deed Book 48230 Pg  662
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

### LEGAL DESCRIPTION (SF1)

**ALL THAT TRACT OR PARCEL OF LAND** lying and being in Land Lot 43 of the 14th District, City of Atlanta, Fulton County, Georgia and being known as Lot SF1 containing 0.067 acres or 3,775 square feet, more or less, and being more particularly depicted on that certain Subdivision Plat prepared for Urban Green Cherokee Developers, LLC, Urban Green Mixed Use, LLC, Urban Green Live/Work, LLC, Urban Green Duplex, LLC, Republic Bank of Georgia, Chicago Title Insurance Company, Buckhead Title & Abstract Company, Inc., and The Zoological Foundation of Georgia, Inc., prepared by Land Surveying Company, dated July 13, 2006, last revised April 30, 2007, filed and recorded May 13, 2009 in Plat Book 345, Page 104, Fulton County, Georgia records.

744568.1

# ♜ **Chicago Title Insurance Company**

POLICY NO.: GA2469-46-43070.001 (Lot SF1)-2010.7230710-80035458

## LOAN POLICY OF TITLE INSURANCE
### Issued by
### *Chicago Title Insurance Company*

*Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.*

### COVERED RISKS

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:*

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   (g) a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
        (i) contracted for or commenced on or before Date of Policy; or
        (ii) contracted for, commenced or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.
12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.
13. The invalidity, unenforceabilty, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

7230710 (6/06)

(a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

(b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

    (i)  to be timely, or

    (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.

**CHICAGO TITLE INSURANCE COMPANY**

By:

Countersigned:

Authorized Signatory

J. Marshall Martin III, as its Vice-

GA2469    43070.001 (Lot SF1)

Buckhead Title & Abstract Company, Inc.

Five Piedmont Center, Suite 750

Atlanta , GA 30305

Tel:(404) 231-9397

Fax:(404) 237-1659

ATTEST           President

Secretary

7230710 (6/06)

ALTA Loan Policy with Georgia Modifications (6/17/06)

# CHICAGO TITLE INSURANCE COMPANY
## LOAN FORM
### SCHEDULE A

File No.: 43070.001 (Lot SF1)
$100,000.00 - Developers

Policy No.: 7230710/80035458

Date of Policy:  July 30, 2009 at 1:03 p.m.

Amount of Insurance: $100,000.00

1.      Name of Insured:

  **The Piedmont Bank, successor in interest to Republic Bank of Georgia**

2.      The estate or interest in the Land that is encumbered by the insured mortgage is:

  **Fee Simple**

3.      Title is vested in:

  **Urban Green Cherokee Developers, LLC by virtue of that certain Limited Warranty Deed from The Zoological Foundation of Georgia, Inc., a Georgia corporation, dated May 1, 2007, recorded May 3, 2007, in Deed Book 44939, Page 30, Fulton County, Georgia records.**

4.      The insured mortgage and its assignments, if any, are described as follows:

  **Deed to Secure Debt and Security Agreement by and between by and between Urban Green Developers, LLC and The Piedmont Bank, dated July 27, 2009, filed and recorded July 30, 2009 in Deed Book 48230, Page 635, Fulton County, Georgia records.**

5.      The Land referred to in this policy is described as follows:

  **All that tract or parcel of land lying and being in Land Lot 43, 14th District, City of Atlanta, Fulton County, Georgia and being more particularly described on Exhibit "A" attached hereto and by this reference made a part hereof.**

6.      This policy incorporates by reference those ALTA endorsement selected below:

  ☒ (Aggregation)

Countersigned by:

**BUCKHEAD TITLE & ABSTRACT COMPANY, INC.**

By: _____
J. Marshall Martin III, as its Vice-President

This Policy is valid only if Schedule B is attached.

72307-10A
805929.1

ALTA Loan Policy with Georgia modifications 6/17/06

# CHICAGO TITLE INSURANCE COMPANY
## LOAN FORM
## SCHEDULE B
## PART I

**File No.: 43070.001 (Lot SF1)**
        **$100,000.00 – Developers)**                                              **Policy No: 7230710-80035458**

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

**Special Exceptions:**

1.  All taxes for the year 2009 and subsequent years, not yet due and payable.

2.  The following matters as shown on that certain Plat prepared for Urban Green Properties, LLC, prepared by LandAir Surveying Company, by H. Tate Jones, GRLS #2339, dated October 19, 2005, last revised July 13, 2006, recorded August 16, 2006 in Plat Book 303, Page 90, Fulton County, Georgia records.

    a.   10' Building setback located on the southern and eastern portion of subject property:
    b.   4' Landscape strip located on the western portion of subject property;
    c.   4" Building line located on the northern portion of subject property; and
    d.   Power line crossing the northern and southwestern portion of subject property.

3.  Declaration of Agreement Regarding Zoning Application Z-05-128 and Proposed Development of Underlying Property by and between Urban Green Properties, LLC and Grant Park Neighborhood Association, dated March 28, 2006.

4.  Easement from Greg Wakeham to Georgia Power Company, dated July 7, 1988, recorded August 23, 1988, in Deed Book 11827, Page 307, aforesaid records.

5.  Agreement Regarding Easements by and among Urban Green Cherokee Developers, LLC, Urban Green Duplex, LLC, Urban Green Live/Work, LLC and Urban Green Mixed Use, LLC, dated May 1, 2007, recorded May 3, 2007, in Deed Book 44939, Page 34, aforesaid records.

6.  Subdivision Plat For: Urban Green Cherokee Developers LLC; Urban Green Mixed Use, LLC; Urban Green Live/Work, LLC; Urban Green Duplex, LLC; Republic Bank of Georgia; Chicago Title Insurance Company; Buckhead Title Abstract Co., Inc.; and The Zoological Foundation of Georgia, Inc, prepared by H. Tate Jones of Land Surveying Company, dated July 13, 2006, last revised April 30, 2007, recorded May 13, 2009, Plat Book 345, Page 104, aforesaid records.

7.  Storm Water Management Inspection and Maintenance Agreement by and between Urban Green Cherokee Developers, LLC and City of Atlanta, dated November 29, 2007, filed November 30, 2007 in Deed Book 46030, Page 450, aforesaid records.

105929.1

# CHICAGO TITLE INSURANCE COMPANY
## LOAN FORM
## SCHEDULE B
## PART I

**File No.: 43070.001 (Lot SF1)**
**$100,000.00 - Developers**

**Policy No: 7230710-80035458**

## EXCEPTIONS FROM COVERAGE

8. Construction Deed to Secure Debt and Security Agreement by and between Urban Green Cherokee Developers and The Piedmont Bank, dated July 27, 2009, filed and recorded July 30, 2009 in Deed Book 48230, Page 600, aforesaid records.

9. No insurance is afforded hereby as to the exact acreage of the property.

10. Rights of upper and lower riparian owners in and to the waters of creeks and branches crossing or adjoining subject property and the natural flow thereof, free from diminution of pollution.

This policy valid only if Schedule B is attached.

72307-10B
805929.1

ALTA Loan Policy with Georgia modifications 6/17/06

# CHICAGO TITLE INSURANCE COMPANY
## LOAN FORM
## SCHEDULE B
## PART II

File No.: 43070.001 (Lot SF1)                           Policy No: 7230710-80035458
        $100,000.00 - Developers

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

None.

This policy valid only if Schedule B is attached.

72307-10B
805929.1

ALTA Loan Policy with Georgia modifications 6/17/06

## EXHIBIT "A"

## LEGAL DESCRIPTION

### Lot SF1

**All that tract or parcel of land** lying and being in Land Lot 43, 14th District, City of Atlanta, Fulton County, Georgia and being more particularly shown as SF1 on that certain Subdivision Plat For: Urban Green Cherokee Developers LLC; Urban Green Mixed Use, LLC; Urban Green Live/Work, LLC; Urban Green Duplex, LLC; Republic Bank of Georgia; Chicago Title Insurance Company; Buckhead Title Abstract Co., Inc.; and The Zoological Foundation of Georgia, Inc, prepared by H. Tate Jones of Land Surveying Company, dated April 30, 2007, recorded May 13, 2009, Plat Book 345, Page 104, Fulton County, Georgia records

**TOGETHER WITH** easements contained in that certain Agreement Regarding Easements by and among Urban Green Cherokee Developers, LLC, Urban Green Duplex, LLC, Urban Green Live/Work, LLC and Urban Green Mixed Use, LLC, dated May 1, 2007, recorded May 3, 2007, in Deed Book 44939, Page 34, aforesaid records.

This policy valid only if Schedule B is attached.

72307-10B

805929.1

ALTA Loan Policy with Georgia modifications 6/17/06

## ALTA 12.06 AGGREGATION ENDORSEMENT

**Attached to and forming a part of
Policy No. 7230710-80035458**

**Issued By**

## CHICAGO TITLE INSURANCE COMPANY

The following policies are issued in conjunction with one another:

| POLICY NUMBER: | COUNTY: | STATE: | AMOUNT: |
|---|---|---|---|
| 7230710-80035458 | Fulton | Georgia | $100,000.00 |
| 7230710-80035538 | Fulton | Georgia | $100,000.00 |

Notwithstanding the provisions of Section 8(a)(i) of the Conditions of this policy, the Amount of Insurance available to cover the Company's liability for loss or damage under this policy at the time of payment of loss hereunder shall be the aggregate of the Amount of Insurance under this policy and the other policies identified above. At no time shall the Amount of Insurance under this policy and the other policies identified above exceed in the aggregate $100,000.00.  Subject to the provisions of Section 10(a) of the Conditions of the policies, all payments made by the Company under this policy or any of the other policies identified above, except the payments made for costs, attorney's fees, and expenses, shall reduce the aggregate Amount of Insurance by the amount of the payment.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

**IN WITNESS WHEREOF,** the Company has caused its corporate name and seal to be affixed hereto by its duly authorized officers.

Dated: July 30, 2009

CHICAGO TITLE INSURANCE COMPANY

By:

**BUCKHEAD TITLE & ABSTRACT
COMPANY, INC.**

Raymond Quirk

President

By: _____
J. Marshall Martin III, as its Vice President

By:

Todd C. Johnson

Secretary

This policy valid only if Schedu

72307-10B
805929.1

ALTA Loan Policy with Georgia modifications 6/17/06

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

### 1. DEFINITION OF TERMS
The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of
   (i) the amount of the principal disbursed as of Date of Policy;
   (ii) the amount of the principal disbursed subsequent to Date of Policy;
   (iii) the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;
   (iv) interest on the loan;
   (v) the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;
   (vi) the expenses of foreclosure and any other costs of enforcement;
   (vii) the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;
   (viii) the amounts to pay taxes and insurance; and
   (ix) the reasonable amounts expended to prevent deterioration of improvements; but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.
   (i) The term "Insured" also includes
      (A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;
      (B) the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;
      (C) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
      (D) successors to an Insured by its conversion to another kind of Entity;
      (E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
         (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2) if the grantee wholly owns the named Insured, or
         (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity,
      (F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;
   (ii) With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f) "Insured Claimant": An Insured claiming loss or damage.

(g) "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": The estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an

obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4.  PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5.  DEFENSE AND PROSECUTION OF ACTIONS**

(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c)  Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

**6.  DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for

examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)  To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii)  To Purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)  To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)  to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.  DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)  The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)  the Amount of Insurance,

(ii)  the Indebtedness,

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)  If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i)  the Amount of Insurance shall be increased by 10%, and

(ii)  the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)  In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d)  In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9.  LIMITATION OF LIABILITY**

(a)  If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the

7230710 (6/06)

ALTA Loan Policy with Georgia Modifications (6/17/06)

completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against noninsured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

**13. THIS PARAGRAPH INTENTIONALLY DELETED.**

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**15. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at Chicago Title Insurance Company, Attn: Claims Department, P. O. Box 45023, Jacksonville, Florida 32232-5023.

ALTA Loan Policy with Georgia Modifications (6/17/06)

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NUMBER 10-86063-crm |
| | ) | |
| URBAN GREEN DUPLEX, LLC, | ) | |
| | ) | CHAPTER 11 |
| Debtor, | ) | |

| | | |
|---|---|---|
| | ) | |
| THE PIEDMONT BANK, | ) | |
| successor in interest to Republic | ) | |
| Bank of Georgia, | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| URBAN GREEN DUPLEX, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## NOTICE OF ASSIGNMENT OF HEARING

**PLEASE TAKE NOTICE** that The Piedmont Bank has filed its Motion to Dismiss The Case or For Relief From the Automatic Stay in the referenced case and related papers with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at 11:00 a.m. on the 21st day of October, 2010, U.S. Bankruptcy Court, Northern District of Georgia, Atlanta Division, 75 Spring Street, Room 1203, Atlanta, Georgia 30303.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two

business days before the hearing.  The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, Room 1340, 75 Spring Street, Atlanta, Georgia 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

  If a hearing on this matter cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing this document and agrees to a hearing on the earliest possible date.

  September __22__, 2010.


    _____/s/  Lynn L. Carroll_____
    Lynn L. Carroll
    Georgia Bar No. 460365
    Siegel & Golder, P.C.
    5605 Glenridge Drive
    One Premier Plaza, Suite 690
    Atlanta, Georgia 30342
    404/252-3000

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the within and foregoing *Motion To Dismiss The Case, Or For Relief From The Automatic Stay and Notice of Assignment of Hearing* upon each party in this action, by depositing a copy of same in the US Mail, with adequate potage affixed thereon to insure delivery, addressed to:

Urban Green Duplex, LLC
400 Peachtree Industrial Boulevard #504
Suite 5
Suwanee, Georgia 30024

Lindsay N.P. Swift
Office of the US Trustee
75 Spring Street
Richard Russell Building, Suite 362
Atlanta, Georgia 30303

Jimmy C. Luke
Foltz Martin, LLC
5 Piedmont Center
Suite 750
Atlanta, Georgia 30305

This _22nd_ day of September, 2010.

_____/s/_____
Lynn L. Carroll
Georgia Bar No. 460365

**SIEGEL & GOLDER, P.C.**
5605 Glenridge Drive
Suite 690, One Premier Plaza
Atlanta, Georgia 30342
404/252-3000
llc@sglegal.com